Edward **HIRSCHBERG**, et al., Plaintiffs,

v.

**LUMBERMENS MUTUAL CASUALTY**, et al., Defendants.

No. C 91–3776 VRW.

United States District Court, N.D. California.

May 7, 1992.

Bruce R. MacLeod, Norma G. Formanek, Jane Felder, Farella, Braun & Martel, San Francisco, Cal., for plaintiffs.

Philip C. Hunsucker, Andrea J. Greenberg, Zelle & Larson, San Francisco, Cal., for defendants.

ORDER GRANTING PLAINTIFFS' MO-TION FOR PARTIAL SUMMARY JUDGMENT IN PART, AND DENY-ING IN PART.

WALKER, District Judge.

On February 7, 1992, Plaintiffs brought a motion for partial summary judgment against defendant Lumbermens Mutual Casualty Company ("Lumbermens"), based on the second cause of action of plaintiffs' complaint. Plaintiffs claimed that Lumbermens had a duty to defend plaintiffs under Policy No. 3BN/MF 700 044–01 ("Policy"), and also sought a determination that Exclusion (f) of the Policy had been waived.

I. FACTS.

Plaintiff Hirschberg was the President of plaintiffs Innovative Foods, Inc. and Cryo-Maid, Inc. Cryo-Maid was acquired by E. Hirschberg Freeze-Drying, Inc. in 1980. In 1983, E. Hirschberg Freeze-Drying merged with its wholly owned subsidiary, Innovative Foods. Innovative Foods became the surviving entity.

From 1972 through 1988, Cryo-Maid leased a parcel of land in San Leandro,

California, known as 1964 Williams Street. This property is now the subject of a lawsuit before this court, C–90–2781 VRW, in which W.S. Associates ("WSA") alleges that property which WSA owns in San Leandro, described as 1964–76 Williams Street, is contaminated by hazardous waste, primarily trichloroethylene ("TCE").

Plaintiffs allege that defendants issued comprehensive general liability insurance policies to plaintiffs during the sixteen years in which Cryo–Maid leased 1964 Williams Street. This motion, however, only concerns the duty to defend under the policy produced by defendants for the period August 1, 1984 to August 1, 1985.

Plaintiffs learned of the alleged contamination at the WSA property and of a potential claim against them in August of 1989. While defendants allege that plaintiffs knew of the alleged contamination prior to this date, there is nothing in the record to support this contention. In December of 1989, plaintiffs, through their insurance broker, notified Lumbermens of the threatened claims. On January 6, 1990, plaintiffs formally tendered their claim for defense and indemnification to Lumbermens and provided Lumbermens with all of the correspondence between plaintiffs and WSA concerning WSA's claims.

Lumbermens denied the January 6 tender in a letter dated March 2, 1990. In September of 1990, WSA filed the underlying suit, and served the complaint on plaintiffs. On September 26, 1990, plaintiffs again tendered the case to Kemper (defendants were companies affiliated with Kemper Group of Insurance Companies) with a copy of the underlying complaint. Lumbermens again denied the claim in letters dated November 6, 1990, February 8, 1991, and March 15, 1991.

## II. ANALYSIS.

■ The duty to defend is much broader and distinct from the duty to indemnify. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). An insurer's duty to defend must be analyzed and determined on the basis of "any potential liability arising from facts available to the insurer from the complaint or other sources available to it at the time of the tender of the defense." *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986). The duty to defend must be assessed at the outset of the case, and not after liability is established. *Id.* at 607, 222 Cal.Rptr. 276. As long as the underlying complaint contains language creating the potential of liability under an insurance policy, the duty to defend is implicated. Further, where "there is doubt as to whether the duty to defend exists, the doubt must resolved in favor of the insured." *Id.* at 607, 222 Cal.Rptr. 276.

■ The Policy states that Lumbermens "shall have the right and duty to defend any suit against the insured seeking damages on account of ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent...." Property damage is defined as "physical injury to ... tangible property which occurs during the period of insurance ... including the loss of use thereof at any time resulting therefrom ..."

The underlying complaint alleges property damage during the Policy period. Paragraph 24 of the underlying complaint alleges that, between 1971 and 1988, the plaintiffs here operated and installed a freeze-drying system which used TCE and other chemicals. Paragraph 27 alleges that in installing and using the freeze-drying system, the plaintiffs caused toxic chemical contamination by allowing TCE and other chemicals "on, in, and beneath the Property and other property, including, but not limited to, the surface and subsurface soil and water."

The underlying complaint alleges claims for damages on account of property damage, as contemplated by the Policy. WSA seeks compensatory damages under each of its 15 causes of action in an amount according to proof at trial, and also seeks damages in the form of reimbursement for the cost of cleaning up contamination. WSA also seeks claims for reimbursement of response costs under CERCLA. The California Supreme Court recently ruled

that these response costs are in fact damages as that term is used in general comprehensive liability policies. *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 816–18, 274 Cal.Rptr. 820, 799 P.2d 1253.

In *Montrose Chemical Corporation of California v. Admiral Insurance Co.,* 3 Cal.App.4th 1511, 5 Cal.Rptr.2d 358 (1992), the California Court of Appeal held that the defendant did have a duty to defend. The court applied a "continuous injury trigger" theory and said that the timing of the cause of the property damage is immaterial as is the date of discovery. If damage is continuous throughout successive policy periods, coverage is triggered under the policies in effect for all periods. The court held that using the appropriate trigger theory, the duty to defend would be implicated because the underlying complaint alleged that damage occurred in 1956 and continued until the present time, and the policy was for a period during this period. *Id.* The present action is analogous in that there is an underlying complaint that alleges damage occurring sometime between 1972 and 1988, a period that includes the Policy. This does not end the analysis, however, since this court must consider the policy limitations and exclusions and any defenses to coverage asserted. *Id.*

■ Defendant asserts that a prima facie showing of late notice has been established, thus precluding summary judgment. As authority for this proposition, defendant relies on *Select Ins. Co. v. Superior Court,* 226 Cal.App.3d 631, 638, 276 Cal.Rptr. 598 (1990). The court in *Select* recognized the broad duty to defend, and also recognized the general rule that the insurer bears the burden of establishing substantial prejudice as a result of late notice. *Id.* at 635, 276 Cal.Rptr. 598. Because of the unique facts of *Select,* however, the court ruled that summary judgment in favor of the plaintiff was inappropriate. Notice was given to the insurer four years after the filing of the complaint and three months after damages had been awarded in the underlying complaint. The insurance company, if proper notice had been given, may have been able to settle for a lesser amount than was awarded at trial. From the record, the court was unwilling to say that there was no issue, since there may have been substantial prejudice. The court did state, however, that the insurer would have the burden of proving prejudice at trial. *Id.* at 638, 276 Cal.Rptr. 598.

Defendant in the present case has failed to meet the burden of showing substantial prejudice. Defendant was advised no later than five months after an initial claim was received and ten months prior to the filing of a complaint. There is no showing that plaintiffs knew of the contamination prior to the letter of August 1989, from WSA. Plaintiffs had moved out of the site in 1988, so the implication that plaintiffs covered up the facts, thereby prejudicing the defendants, is not factually supported.

Furthermore, defendant denied coverage on other grounds not relating to late notice. There has been no showing by the defendant that if it had been advised immediately of the claim in August 1989 it would have done anything differently. It took defendant over one year just to produce the Policy, and they had initially denied coverage based on the lack of a policy for that period, among other grounds.

■ Defendant also relies on the pollution exclusion, Exclusion (f), to deny any duty to defend. Defendant claims that the burden is on the insured to show that the contamination was "sudden and accidental" so that the exception to the exclusion applies. The Ninth Circuit has held that the insurer bears the burden of showing that an exclusion applies, once an insured establishes coverage. *Intel Corporation v. Hartford Accident & Indemnity Co.,* 952 F.2d 1551, 1557–58 (9th Cir.1991).

Defendant, however, submitted a recent California case in which the California Court of Appeal ruled that the insured has the burden of showing that an exception to the exclusion applies. *See Marglen Industries, Inc. v. Aetna Casualty and Surety Co.,* 4 Cal.App.4th 414, 5 Cal.Rptr.2d 659 (1992). Although a "sudden and accidental" exception to an exclusion was at issue in *Marglen,* it was not a pollution exclusion. Further, the reasoning of the court

was that requiring the insurer to "negative the possible applicability of an exception to an exclusion, at the stage of deciding on the duty to defend, seems to require the insurer to possess specialized knowledge about the insured's circumstances which it could not otherwise be expected to have." *Id.*, 5 Cal.Rptr.2d at 669. In *Marglen*, the insured manufactured carpets which faded after installation. There was a defective products exclusion in the Policy, and there were "no allegations in the underlying actions that the carpeting had failed to withstand ordinary indoor conditions to which carpeting is normally subject." *Id.*, 5 Cal. Rptr.2d at 670. In other words there was nothing in the underlying action that would put the insurer on notice that the defective products exclusion would not apply because the damage was "sudden and accidental". In addition, plaintiffs came up with a theory, almost at the eleventh hour, that a sudden phenomenon of ozone oxidation created the damage. This made the damage "sudden and accidental" according to the plaintiffs. *Id.*, 5 Cal.Rptr.2d at 667.

In the present case, defendant was put on notice by the underlying action that the "sudden and accidental" exception would apply. The underlying complaint alleges in paragraph 27 that the contamination was caused by "... spilling, leaking ... escaping ..." among other things. This was certainly enough to let defendants know that the "sudden and accidental" exception may apply. Further, plaintiffs are not using a theory unknown to the defendant to bring the damage within this exception. Thus, even if the court were to apply the *Marglen* case, plaintiffs have satisfied their burden, in that the underlying complaint states a theory so that the "sudden and accidental" exception would apply, and defendant had sufficient facts to have been placed on notice that the exception may apply.

■ Completely separate and independent from the property damage claim, plaintiffs claim that coverage exists under the personal injury provision of the Policy as well. The Policy contains a Broad Form Comprehensive General Liability Endorse-

ment which defines personal injury as "injury arising out of one or more of the following offenses committed during the policy period: ... (2) wrongful entry or eviction or other invasion of the right of private occupancy...." The underlying complaint alleges causes of action based on nuisance and trespass, and plaintiffs contend that those claims fall within the Policy definition of personal injury.

At a minimum, the term "other invasion of the right of private occupancy" is ambiguous, and any ambiguity is to be resolved against the insurer. *See American States Ins. Co. v. Canyon Creek, et al.*, No. C–90–2376 WHO, 1992 WL 240613, 92 Daily Journal D.A.R. 3958, 3962 (N.D.Cal.1992). Keeping in mind that only the possibility of coverage need be raised for the duty to defend to be implicated, this alone may be enough. In addition, however, California courts have defined trespass as "an invasion of the interest in the exclusive possession of land." *Wilson v. Interlake Steel Co.*, 32 Cal.3d 229, 233, 185 Cal.Rptr. 280, 649 P.2d 922 (1982). Nuisance has been defined as an "interference with the interest in the private use and enjoyment of land." *Id.* In *Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 274 (1st Cir.1990), the First Circuit held that allegations "sounding in 'trespass or nuisance'" were covered because the policy defined personal injury as "wrongful entry or eviction or other invasion of the right of private occupancy," language identical to the Policy here.

Further, commentators have recognized that in the context of personal injury coverage of general comprehensive liability policies, the "invasion of the right of private occupancy" affords coverage "for interference with possession and enjoyment by means such as noise, leaky roofs, obstruction of access, obnoxious fumes, ... actionable on a variety of theories such as ... nuisance, or trespass." D. Farberstein & F. Stillman, *Insurance for the Commission of Intentional Torts*, 20 Hastings L.J. 1219, 1241 n. 96 (1969). Since the underlying complaint alleges claims for the interference with WSA's "comfortable use and enjoyment of the property," there exists

the potential for coverage, and correspondingly, a duty to defend.

Defendant contends that summary judgment is inappropriate because more discovery is necessary. The discovery defendant is requesting, however, relates to coverage and not to the duty to defend. The duty to defend should not be suspended so that defendant can conduct discovery relating to its duty to indemnify.

Since the underlying complaint raises the possibility of coverage under the policy, defendant has a duty to defend plaintiffs. Plaintiffs' motion for partial summary judgment is, therefore, GRANTED.

 Lastly, the plaintiffs seek a determination that Exclusion (f) has been waived. Under California law, waiver is a question of fact, and an affirmative defense, for which the insured bears the burden of proof. *Insurance Co. of the West v. Haralambos Beverage Co.*, 195 Cal.App.3d 1308, 1320, 241 Cal.Rptr. 427 (1987); *Intel Corporation v. Hartford Accident & Indemnity*, 952 F.2d 1551, 1559 (9th Cir. 1991). A waiver may result from, (1) the intentional relinquishment of a right or (2) acts which are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished. Further, the court in *Intel* reviewed existing case law regarding waiver, and found that California courts, and Federal courts applying California law, require a showing of misconduct on the part of the insurer or detrimental reliance on the part of the insured for waiver to have occurred. *Id.* at 1560.

In the present case, the plaintiffs were appraised of the pollution exclusion when the defendant reserved its right to deny coverage on the pollution exclusion contained in the Policy, if different from the one in later policies, similar to the situation in *Intel*. There has been no showing that later actions have been so inconsistent with the exercise of this right so as to induce a reasonable belief that the right has been relinquished. Furthermore, there has been no showing of detrimental reliance by plaintiffs, or misconduct by defendant. Plaintiffs request for a declaration

that Exclusion (f) has been waived is, therefore, DENIED.

### III. CONCLUSION.

Accordingly, it is HEREBY ORDERED:

(1) Plaintiff's motion for partial summary judgment with respect to the second cause of action is GRANTED for the reasons set forth above.

(2) Plaintiff's request for a declaration that Exclusion (f) of the Policy has been waived is DENIED.