**GOULD INC., Plaintiff,**

v.

**ARKWRIGHT MUTUAL INSURANCE COMPANY, et al., Defendants.**

No. 3: CV 92–403.

United States District Court, M.D. Pennsylvania.

June 25, 1993.

the result of a third person". *See Stoneking II* at 723.

John E. McKeever, Dennis R. Suplee, Diana S. Donaldson, Susan G. Caughlan, Schnader, Harrison, Segal & Lewis, Stacy J. Levitan, Philadelphia, PA, for Gould Inc.

Diana S. Donaldson, Schnader, Harrison, Segal & Lewis, William H. Black, Jr., Madeline M. Sherry, Hecker Brown Sherry & Johnson, Philadelphia, PA, for Arkwright Mut. Ins. Co.

Stephen C. Baker, Marc A. Polk, Raymond S. Wierciszewski, Stradley Ronon Stevens & Young, Wayne, PA, William J. Barker, Jr., Samuel J. Arena, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Continental Cas. Co., Transportation Ins. Co.

Henry P. Burke, Scranton, PA, James D. Veach, Mound Cotton & Wollan, New York City, for Hanover Ins. Co. Ltd.

Michael F. O'Neill, Purcell Ries Shannon & Mulcahy, Bedminster, NJ, for Hartford Fire Ins. Co.

Christopher W. Mattson, Barley Snyder Cooper & Barber, Lancaster, PA, Roger E. Warin, Steptoe & Johnson, Washington, DC, for Highlands Ins. Co.

Charles W. Rubendall, II, Keefer, Wood, Allen and Rahal, Harrisburg, PA, John H. Suminski, McElroy Deutsch & Mulvaney, Morristown, NJ, for Industrial Indem. Co., Int'l Ins. Co., Int'l Surplus Lines Ins. Co., Twin City Fire Ins. and U.S. Fire Ins.

Mariola K. Weithers, Regina K. McCabe, Terry M. Cosgrove, Chicago, IL, Jacob I. Nogi, Nogi, Appleton, Weinberger & Wren, P.C., Scranton, PA, for Walbrook Ins. Co. Ltd., "Winterthur" Swiss Ins. Co., Bermuda Fire & Marine Ins. Co. Ltd., Compagnie Europeenne D'Assurances Industrielles S.A., Bryanston Ins. Co. Ltd., St. Katherine Ins. Co. Ltd., Louiville Ins. Co. Ltd., C.N.A. Reinsurance of London Ltd., British Nat. Life Ins. Soc. Ltd., Yasuda Fire & Marine Ins. Co. (U.K.), Mentor (U.K.), Turegum Ins. Co. and Certain Foreign Companies.

Anthony J. Piazza, Jr., Scranton, PA, M. Elizabeth Medaglia, Richard S. Kuhl, Jackson & Campbell, P.C., Washington, DC, Simy C. Wolf, Jeffrey S. Weinstein, Mound, Cotton & Wollan, New York City, Robert N. Kelly, Jackson & Campbell, P.C., Washington, DC, Henry P. Burke, Scranton, PA, Stuart Cotton, James D. Veach, Mound Cotton & Wollan, New York City, for National Union Fire Ins. Co. of Pittsburgh, PA.

Stephen W. Miller, Clark, Ladner, Fortenbaugh & Young, for Northbrook Indem. Co.

John Mirabella, Duffy and Quinn, Philadelphia, PA, for Pennsylvania Ins. Guar. Ass'n.

Wilson M. Brown, III, Drinker Biddle & Reath, Philadelphia, PA, for Republic Ins. Co.

Timothy E. Foley, Scranton, PA, John T. Harding, Jr., Kristen E. McIntosh, Zelle & Larson, Waltham, MA, for Employers Ins. of Wausau.

Stephen W. Miller, Clark, Ladner, Fortenbaugh & Young, Vincent S. Ziccolella, Chicago, IL, Mary K. Finley, Patricia J. Hogan, Chicago, IL, for Northbrook Excess and Surplus Ins. Co.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Plaintiff, Gould, Inc., initiated this diversity based action on March 27, 1992, against several Defendant insurance companies seeking coverage and indemnification for lawsuits brought by area property holders whose premises were allegedly contaminated by emissions from Gould's former Throop, Pennsylvania facility, as well as for an action brought by the United States Environmental Protection Agency (hereinafter EPA) to clean up the contamination at and around the Throop site. More specifically, the events giving rise to this action date back to 1988, 1989, and 1990, when a large number of Throop property owners filed three suits against Gould alleging bodily injury, property damage, nuisance and trespass.[1] (Doc. No. 5, Exhs. 49, 50, and 51).

Gould ultimately entered into Settlement Agreements in all three cases, and, now

---

1. The lawsuits involved are: *Ambrogi, et al. v. Gould, Inc.,* Civil Action No. 88-1205; *Toole, et al. v. Gould Inc.,* et al., Civil Action No. 89-0576; and *Barbiero, et al. v. Gould Inc.,* Civil Action No. 90-1476.

brings this action for: (1) all sums incurred in the defense and settlement of the actions; (2) all sums incurred in connection with the government-ordered cleanup of its former facility; and (3) a declaration that the insurers have a continuing obligation to defend and indemnify it against any further EPA proceedings arising out of the contamination at the Throop facility. (Doc. No. 1, p. 5, ¶ 1 and p. 24, ¶ 820).

Currently pending before the Court is Defendant National Union Fire Insurance Company's Motion for Summary Judgment. (Doc. No. 78). After carefully reviewing National Union's motion, as well as Plaintiff's response,[2] we find that the personal injury clause contained in National Union's policy when read in the context of the entire policy is ambiguous and, as such, it would be inappropriate to enter summary judgment.

## I

## BACKGROUND

The history surrounding Gould's former facility, the Marjol Battery & Equipment Company, is somewhat involved. Suffice is to say that Lawrence Fiegleman originally owned and operated a battery crushing and lead recovery operation at the Marjol site from approximately 1963 to 1980. (Doc. No. 1, p. 20). Plaintiff Gould then purchased the Marjol Battery & Equipment Company from Mr. Fiegleman in May 1980 and continued its operation until April 1981. (Doc. No. 1, p. 20). Plaintiff Gould claims, however, that from November 1981 through April 1982, Gould used the Marjol site strictly as a transfer station for batteries being shipped to other sites and by April 1982, ceased all operations at the site. (Doc. No. 1, p. 20).

In 1987, the United States Environmental Protection Agency (hereinafter EPA) performed an investigation of the levels of lead and other hazardous substances at the Marjol site and the surrounding area. The EPA then required Gould to enter in 1988 a Consent Agreement and Order to conduct site stabilization activities concerning lead and other hazardous substances at the Marjol site and address lead-contaminated soils on nearby residential properties. (EPA *CERCLA* Order). Gould claims that it has incurred in excess of $17.5 million dollars to comply with said Order. (Doc. No. 249, p. 36).

Thereafter, in May 1990, the EPA required Gould to enter into a Consent Agreement and Order to undertake interim measures and a facility investigation concerning hazardous wastes allegedly found at the Marjol site, which Gould is currently in the process of performing. (EPA *RCRA* Order).

## II

## LEGAL STANDARDS

### A. *Summary Judgment*

In considering a motion for summary judgment, we must ascertain, on the basis of pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, whether or not there are any genuine issues of material fact, and if none, whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Schleig v. Communications Satellite Corp.*, 698 F.Supp. 1241 (M.D.Pa. 1988). An issue of material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Incorporated*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden to demonstrate the absence of material fact remains with the moving party regardless of which party would have the burden of persuasions at trial. *Levendos v. Stern Entertainment*, 860 F.2d 1227, 1229 (3d Cir.1988). The moving party's "burden" under Rule 56(c), however, is discharged by demonstrating to the Court the absence of evidence to support the non-moving party's case. *Trap Rock Industries, Inc. v. Local 825, Interna-*

---

**2.** It should be noted that on December 4, 1992, Plaintiff Gould filed a Motion for Leave to File a Surreply to Defendant National Union's Motion for Summary Judgment. (Doc. No. 118). Defendant National Union then filed a Motion for Leave to File a Reply to Gould's Surreply. (Doc. No. 140). As the Court considered both Plaintiff Gould's Surreply and Defendant National Union's Reply in reaching a decision, the motions are granted.

*tional Union of Operating Engineers, AFL–CIO,* 982 F.2d 884, 890 (3d Cir.1992).

## B. *Interpretation of Insurance Contracts*

In addition to considering the burdens placed upon the parties in pleading a summary judgment motion, we are also mindful of the well-established principles governing interpretation of insurance contracts. Those principles were outlined by the Third Circuit in *Little v. MGIC Indemnity Corp.,* 836 F.2d 789, 793 (3d Cir.1987), as follows:

> Where the language of the policy is clear and unambiguous, a court is required, as with any contract, to enforce that language. *Standard Venetian Blind Company v. American Empire Insurance Co.,* [503 Pa. 300] 469 A. 2d 563, 566 (1983). If possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions. *Houghton v. American Guarantee Life Insurance Company,* 692 F.2d 289, 291 (3d Cir.1982). However, if the policy, when viewed as a whole, is reasonably susceptible to more than one interpretation, it is considered ambiguous. *Vlastos v. Sumimoto Marine & Fire Insurance,* 707 F.2d 775, 778 (3d Cir.1983). Any legitimate ambiguity must be resolved against the insurer. *Id.*

Another formulation of this concept provides:

> '[a] provision of a policy is ambiguous [only] if reasonably intelligent [people] on considering it in the context of the entire policy would honestly differ as to its meaning.'

*Adelman v. State Farm Mutual Automobile Ins. Co.,* 255 Pa.Super. 116, 123, 386 A.2d 535, 538 (1978). (citations omitted).

In a later case comments on these principles were expanded to include some guidance that is particularly applicable to the present case. In *Pennbarr Corp. v. Insurance Company of North America,* 976 F.2d 145, 151 (3d Cir.1992), the Third Circuit recently noted:

> "[A] policy of insurance is simply a contract and its provisions should, of course, be construed as in any other contract. A contract is ambiguous if it is susceptible of

more than one meaning. However, a Court should not torture the language of [a] policy to create ambiguity. An insurance policy cannot be rewritten by the Court and is not ambiguous merely because it is complex.

> To discern whether the policy is ambiguous, we must, consider the words of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings. Our goal is to decide whether there [are] objective indicia that, from the linguistic standpoint of the parties, the terms of the contract are susceptible of different meanings. Genuine ambiguity exists only where the phrasing of the policy is so confusing the average policy holder cannot makeout the boundaries of the coverage. *Moreover, it is our responsibility to give effect to the whole policy, not just one part of it. A construction that gives reasonable meaning to all of the contract's provisions is preferred to one which leaves a portion of the writing useless or inexplicable.* Finally, we may not make a different or better contract than the parties themselves saw fit to enter." *Pennbarr Corp. v. Insurance Company of North America,* 976 F.2d 145, 151 (3d Cir.1992). (emphasis added) (citations omitted).

Utilizing the above standards, we shall now address the Defendant's Motion for Summary Judgment.

## III

## DISCUSSION

On August 3, 1992, Defendant National Union filed a motion for summary judgment. In support of its motion, National Union contends that "the language of the pollution exclusion clause clearly and unambiguously excludes coverage for gradual pollution from repeated discharges of contaminants." (Doc. No. 79, p. 16). Defendant National Union asserts that the contamination at or around the site was caused by a continuous series of releases over a period of twenty years, and thus, Gould's claims are excluded from coverage. (Doc. No. 79, p. 20).

Gould filed a brief in opposition to Defendant National Union's motion for summary judgment arguing that "the underlying claims at issue here fall within the separate 'personal injury' coverage provided by an endorsement which has its own exclusions (not including a pollution exclusion)."[3] (Doc. No. 105, p. 2).

The policy issued to Gould by National Union provides two broad areas of protection—coverage for bodily injury and property damage liability, and coverage for personal injury liability. The bodily injury and property damage portion of the policy contains a pollution exclusion clause, which excludes coverage for:

> ... bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. (Doc. No. 79, p. 14).

This is the provision National Union relies on to avoid coverage.

Completely separate and independent from the bodily injury and property damage portion, however, is coverage under the personal injury provision of the policy, which does not contain a pollution exclusion and reads as follows:

I. Coverage—Personal Injury Liability

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of the other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy ...

(Doc. No. 81, Exh. S).

Gould asserts that the underlying complaints alleged conduct falling within the offenses listed in Group C because the complaints alleged causes of action for both trespass and nuisance. For example, Plaintiffs in all three lawsuits alleged that "the operations at Marjol have caused an invasion ... of Plaintiffs' interest in the exclusive possession of their land, constituting a trespass, and resulting in the harm and damages ..." and "create[d] a nuisance condition so as to interfere with the use and enjoyment by Plaintiffs of their property." (Doc. No. 105, p. 8).

National Union disagrees and contends that the coverage provided by the personal injury endorsement relates to purposeful acts of entry, such as a landlord who intentionally deprives or attempts to deprive the injured party of its right to occupy property. (Doc. No. 114, p. 6).

Although this is a somewhat novel issue, a few Courts have recently addressed similar claims. One of the first cases to consider this issue is *Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 272–73 (1st Cir.1990). In *Titan*, the First Circuit concluded that under New Hampshire law the allegation that the City of Keene's sewage treatment plant's noxious odors, noise, and light interfered with homeowners' quiet enjoyment of their property was within the coverage of the city's personal injury liability policy, unless the insurer could show by extraneous evidence a different meaning of the

---

**3.** Because the parties base their positions on two separate provisions of National Union's policy, and because the Court recently granted the parties additional time to brief the issue of the pollution exclusion clause, we shall address only the personal injury liability portion of the policy in the present Memorandum and Order.

clause providing coverage for liability arising out of invasion of right of private occupancy. *Titan*, 898 F.2d 265, 272. In reaching this conclusion, the First Circuit relied on the reasoning set forth in *Town of Goshen v. Grange Mutual Ins. Co.*, 120 N.H. 915, 424 A.2d 822, 825 (1980), which held that "an invasion of the right of private occupancy need not involve an appreciable and tangible interference with the physical property itself." *Goshen*, 424 A.2d at 824.

A more recent case finding coverage is *Pipefitters Welfare Educ. Fund v. Westchester Fire*, 976 F.2d 1037 (7th Cir.1992), wherein Arst, a scrap metal processor and dealer, bought a transformer from Pipefitters. Shortly after the sale an Arst employee cut the transformer open and unbeknownst to the employee approximately 80 gallons of oil laden with polychlorinated biphenyls (PCBs) spilled onto the premises. Arst blamed Pipefitters for the mishap, and brought suit under federal and state environmental statutes and state common law. Here, like the present case, Westchester Fire claimed that the personal injury endorsement contained in its policy encompassed only conduct that is (1) undertaken by one claiming an interest in property, and (2) intended to deprive "the injured party of its right to privately occupy" that property. *Id.* at 1040. As such, the parties disagreement was likewise limited to whether the restrictive gloss the insurer places on the "wrongful entry or eviction or other invasion of the right to private occupancy" provision of its policy is tenable.

In addressing this issue, the Court first engaged in a detailed discussion of the specific offenses, noting first that the term eviction has a precise definition which denotes actions taken by landlords. Specifically, the Court stated:

> There are two variants of eviction, actual and constructive. Both, in their plain and ordinary meaning, denote actions taken by landlords with the intent to deprive tenants of their right to occupy or enjoy leased premises. *Pipefitters Welfare Educ. Fund v. Westchester Fire*, 976 F.2d 1037, 1040 (7th Cir.1992).

As for wrongful entry, the Court determined that both Missouri and Illinois courts recognize that wrongful entry is substantially similar to trespass, and to commit a trespass, one need not intend to take possession of the encroached-upon premises, or to deprive occupants of their right to possess those premises. *Id.* at 1041.

Lastly, the Seventh Circuit discussed the catch-all phrase "other invasion of the right to private occupancy." The Court noted that this phrase has a less precise meaning and, therefore, to arrive at its proper definition a Court must employ the principle of *ejusdem generis*—where a general term follows a series of specific terms, the former should not be given its broadest possible meaning, but rather extends only to matters of the same general class or nature as the terms specifically enumerated. Thus, the Court concluded that if an intent to dispossess the injured party of the right to occupy a given premises is required, like in eviction, then the same holds true for conduct falling within the "other invasion" catch-all. Wrongful entry, however, is not limited to such intent and therefore, the claim fell within the terms of the personal injury provision. *Id.* at 1042.

Another case which is very enlightening on this issue is *Napco, Inc. v. Fireman's Fund Insurance Co.*, No. 90–0993, slip op. (W.D.Pa. May 22, 1991) (presently in the form of a Report and Recommendation issued by Magistrate Judge Benson). In this case, Napco sought coverage and a defense from its insurance carrier for a state court trespass action wherein Vogel, whom Napco contracted with to remove waste generated by Napco, claimed that Napco improperly included toxic wastes in the waste removed by Vogel. Accordingly, Vogel sought damages from Napco to compensate for expenses encountered by Vogel in complying with EPA regulations regarding cleanup of their dump site. Napco, relying on the personal injury provision, similarly alleged the state court trespass action fell under the definition of "wrongful entry" or "other invasion of the right of private occupancy."

In discussing whether a suit for trespass and nuisance is covered under the personal injury section of the policy, the Napco Court noted:

Indeed, nuisance and, in this case, trespass, need not necessarily entail an ouster from ownership or possession of the property in question; the possession of the property may be affected to the extent that the person or persons with possessory interests in the property suffer real diminution of those interests through an interference with their right to use or enjoy the property. *Napco*, slip op. at 11.

The Napco Court then went on to alternately determine that:

At the very least, the terms "wrongful entry" and "other invasion of the right of private occupancy," as used in the insurance contracts in question, are, in the context of the underlying actions, ambiguous. That ambiguity must be held against the insurance company. *Napco*, slip op. at 14–15.

Other Courts, while not ruling that the phrase "other invasion of private occupancy" specifically encompasses the torts of trespass and nuisance, have also determined that "at a minimum, the term 'other invasion of the right of private occupancy' is ambiguous, and any ambiguity is to be resolved against the insurer." *See Hirschberg v. Lumbermans Mutual Casualty, et al.,* 798 F.Supp. 600 (N.D.Cal.1992). The *Hirschberg* Court relied on commentators who have recognized that in the context of personal injury coverage of general comprehensive liability policies, the "invasion of the right of private occupancy" affords coverage "for interference with possession and enjoyment by means such as noise, leaky roofs, obstruction of access, obnoxious fumes ... actionable on a variety of theories such as ... nuisance or trespass." *Id.* at 604.

A few Courts have found, however, that actions for trespass and nuisance do not fall within this endorsement. For example, a Michigan Court also applying the doctrine of *ejusdem generis* to the phrase "other invasion of the right of private occupancy" held that the preceding words "wrongful entry and eviction" involve some affront to an interest in the possession of real property. Thus, the Court held that the term should also be interpreted, under the same doctrine, to be of the same general kind as the other causes of action listed: false arrest, false imprisonment, malicious prosecution, libel, slander and invasion of privacy. The Court concluded that all of the above offenses involve issues of individual freedom: freedom from unlawful arrest and imprisonment; freedom from unlawful disparagement of one's character or reputation; freedom from unreasonable depredations into one's right to be left alone, among others, and none involve damage to land. The Court, therefore, determined that coverage is not applicable. *Straits Steel and Wire Co. v. Michigan Millers Mutual Ins. Co.,* No. 91–72991, slip op. at 8 (Circuit Ct. for Kent County, Michigan) (Soet, J., June 10, 1992).

The Superior Court of New Jersey in *Biddle Sawyer Corporation v. National Union Insurance Company,* Doc. No. Mon–L–5219–91 (N.J.Sup.Ct., Monmouth Co., Law Div., July 24, 1992), also declined to find coverage under the personal injury liability section of National Union Insurance's policy for damages related to the discharge or release of pollutants stored, generated or released by the Biddle Sawyer Corporation. The Court, however, summarily reached this conclusion stating only that "I find that the alleged damage in this case does not fall within this [personal injury liability] category. I find that the alleged damage in this case falls within the absolute pollution exclusion."

Likewise, the Fifth Circuit declined to find coverage when the City of Natchitoches, occupier of a man-made lake contaminated with polychlorinated biphenyls (PSBs), filed a third-party declaratory judgment action against its commercial general liability insurer for coverage in an underlying action brought by adjoining landowners. *Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203 (5th Cir.1991). The City contended that the charge in some complaints that PCB contamination affected lands adjacent to the lake comes within the wrongful entry provision. In affirming the District Court's refusal to adopt the City's contention, the Circuit Court noted:

The District Court held such a construction of Coverage B (wrongful entry) was unreasonable. The court stated that to extend Coverage B to all property dam-

ages, including damages which would be covered under Coverage A, would render the pollution exclusion meaningless. This is correct. The risk of property damage caused by pollution, a risk which Titan (the insurer) expressly excluded and one for which the City paid no premium under Coverage A, would be subsumed under Coverage B.

*Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203, 209 (5th Cir.1991).

By its terms National Union's pollution exclusion clause applies only to the policy's property damage and bodily injury provisions. It does not purport to restrict coverage for personal injury. As such, we are confronted with reconciling the two provisions. While we have no doubt that National Union intended to exclude coverage for bodily injury or property damage arising out the release of various pollutants, it can arguably be said that the "personal injury" endorsement represents an addition or extension of coverage which is not limited by the pollution exclusion clause contained in the property damage portion of the policy. Thus, one can reasonably interpret the entire policy as providing coverage for personal injury damages which are not subject to the exclusions contained in the property damage portion of the policy. We, therefore, find that the personal injury endorsement with its coverage for "wrongful entry" and "other invasion of the right of private occupancy", is, in the context of the entire policy, specifically, the pollution exclusion clause, ambiguous. As we must resolve any ambiguity in favor of the insured, we hold that the loss suffered by the Plaintiff potentially falls within the insured risk and, thus, summary judgment is denied.

## CONCLUSION

For the reasons stated above, Defendant National Union's Motion for Summary Judgment is denied.

An appropriate Order is attached.

## ORDER

AND NOW, THIS 25th DAY OF JUNE 1993, IT IS HEREBY ORDERED AS FOLLOWS:

1. Defendant National Union's Motion for Summary Judgment is DENIED with respect to the personal injury endorsement portion of the policy.

2. This Memorandum and Order disposes of Documents Numbered 78 and 118.