**HOUSTON GENERAL INSURANCE COMPANY, Plaintiff,**

v.

**AG PRODUCTION COMPANY AND CHEMURGIC AGRICULTURAL CHEMICALS, INC., Defendant.**

**No. CV–F–93–5475 REC.**

United States District Court, E.D. California.

Nov. 30, 1993.

King & Williams by James J.S. Holmes, and Michael D. Collins, Los Angeles, CA, for plaintiff and moving/prevailing party Houston Gen. Ins. Co.

Baker, Manock & Jensen by Glenn J. Holder, Fresno, CA, for defendants and moving parties AG Production Co. and Chemurgic Agr. Chemicals, Inc.

## ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

COYLE, Chief Judge.

On November 29, 1993 the court heard the cross motions for summary judgment filed by the parties. Upon due consideration of the written and oral arguments of the parties and the record herein, the court grants plain-tiff's motion and denies defendants' motion for the reasons set forth herein.

Houston General Insurance Company (hereinafter referred to as Houston) has filed a Complaint for Declaratory Relief seeking a declaration from this court that Houston has no duty to defend or indemnify Ag Produc-tion Company and Chemurgic Agricultural Chemicals, Inc. (hereinafter referred to col-lectively as Ag Production) in an action filed on May 12, 1992 against Ag Production and Chemurgic and others by the City of Modes-to and Del Este Water Company in the San Francisco County Superior Court for soil and ground water chemical contamination (here-inafter referred to as the Modesto Com-plaint). The Complaint for Declaratory Re-lief alleges that Houston assumed the de-fense of defendants subject to a "full and complete reservation of rights." The Com-plaint for Declaratory Relief describes cer-tain of the specific disclaimers of specific types of claims described in the reservation of rights letter, but further alleges that these descriptions are not exclusive. The Com-plaint for Declaratory Relief alleges that the facts, claims and allegations of the Modesto complaint are not covered under the terms of the policy and that Houston has no duty to defend or indemnify the defendants.

It is alleged in the Modesto Complaint that various manufacturers sold DBCP to farmers and other customers for use in controlling nematodes from at least August 1977 to 1985. It is further alleged that various manufactur-ers and distributors sold EDB to farmers and other customers for use in controlling nematodes from at least 1955 to 1982. Para-graph 59 alleges that "Modesto's wells did not sustain EDB contamination which re-quired remediation and which made the wa-ter unusable until March 20, 1989." Para-graph 80 alleges that "[p]laintiffs' wells have been contaminated and they have suffered damages because ... the concentrations of DBCP in its water made the water unusable by January 1990...." Paragraph 31 alleges that "[b]ased on information and belief, ... DBCP and EDB contaminated water is mi-grating toward several of the remaining wells in [the] water systems." The Modesto Com-plaint is the only evidence presented for the

claim of coverage under Houston's policy. Houston issued a commercial general liability policy number 5CMP942529800 for the period March 1, 1992 to March 1, 1993. The policy provides in pertinent part as follows:

SECTION 1—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies ... This insurance applies only to 'bodily injury' or 'property damage' which occurs during the policy period. The 'bodily injury' or 'property damage' must be caused by an 'occurrence.'....

.    .    .    .    .

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' ... to which this insurance applies....

Occurrence and personal injury are defined in the policy as:

9. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

10. 'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

.    .    .    .    .

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies....

The exclusion from coverage relevant to this action is "[a]ny loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants."

A. *Coverage and Duty to Defend.*

▆ The burden is on the insured to prove that an event is a claim within the scope of coverage under the policy. *Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986). However, the duty to defend is much broader and distinct from the duty to indemnify. *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). An insurer's duty to defend must be analyzed and determined on the basis of "any potential liability arising from facts available to the insurer from the complaint or other sources available to it at the time of the tender of the defense." *CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986). The duty to defend must be assessed at the outset of the case, and not after liability is established. *Id.* As long as the underlying complaint contains language creating the potential of liability under an insurance policy, the duty to defend is implicated. Further, where "there is doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured." *Id.*

It is not disputed that contamination of groundwater constitutes third-party property damage for purposes of general liability policies. *Aerojet–General Corp. v. San Mateo Superior Court,* 211 Cal.App.3d 216, 219, 257 Cal.Rptr. 621 (1989). Rather, the dispute is whether property damage is alleged to have occurred during the policy period.

1. *Appropriate Trigger.*

In this regard, Houston moves for summary judgment in its favor on the ground that there is no coverage under the terms of the Policy at issue because any property damage was discovered before the inception of that Policy. Houston argues that what is known in the California cases as the "manifestation trigger test" should be applied to this third party claim. Ag Production argues that either the "exposure trigger" or the "continuous trigger" should apply or, alternatively, that the court should rule that the policy provisions are ambiguous and cannot be interpreted in this proceeding.

There is a split of authority in California concerning whether this manifestation trigger or the continuous trigger test applies in third party cases.

In *Prudential–LMI Commercial Insurance v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990), the California Supreme Court held that in progressive property loss cases in the context of a homeowners insurance policy the one year statute of limitations period begins to run on the date of inception of the loss. The date of inception of the loss was defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that the notification duty under the policy has been triggered. 51 Cal.3d at 683–693, 274 Cal.Rptr. 387, 798 P.2d 1230. The Supreme Court went on to discuss the allocation of indemnity between successive first party property insurers when the loss in continuous and progressive throughout successive policy periods, but·is not discovered until it becomes appreciable, for a reasonable insured to be aware that his notification duty under the policy has been triggered. The Supreme Court held in pertinent part as follows:

> [W]e conclude that in first party progressive property loss cases, when, as in the present case, the loss occurs over several policy periods and is not discovered until several years after it commences, the manifestation rule applies ... [P]rior to the manifestation of damage, the loss is still a contingency under the policy and the insured has not suffered a compensable loss ... Once the loss is manifested, however, the risk is no longer contingent; rather, an event has occurred that triggers indemnity unless such event is specifically excluded under the policy terms. Correspondingly, in conformity with the loss-in-progress rule, insurers whose policy terms commence after initial manifestation of the loss are not responsible for any potential claim relating to the previously discovered and manifested loss. Under this rule, the reasonable expectations of the insureds are met because they look to their present carrier for coverage. At the same time, the underwriting practices of the insurer can be made predictable because the insurer is not liable for a loss once its contract with the insured ends unless the manifestation of loss occurred during its contract term.

> One final question must be addressed regarding the application of a manifestation rule of coverage in progressive loss cases: how does the rule relate to our rules of delayed discovery and equitable tolling ...? We have previously defined the term 'inception of the loss' as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered. We conclude that the definition of 'manifestation of the loss' must be the same. Under this standard, the date of manifestation and hence the date of inception of the loss will, in many cases, be an issue of fact for the jury to decide. When, however, the evidence supports only one conclusion, summary judgment may be appropriate. For example, when the undisputed evidence establishes that no damage had been discovered before a given date (i.e., no manifestation occurred), then insurers whose policies expired prior to that date could not be liable for the loss and would be entitled to summary judgment. The litigation can then be narrowed to include only the insurers whose policies were in effect when the damage became manifest.

51 Cal.3d at 699, 274 Cal.Rptr. 387, 798 P.2d' 1230. However, the Supreme Court emphasized that its holding is limited in application to the first party progressive property loss cases in the context of a homeowners insurance policy. The Supreme Court explained: "[T]here are substantial analytical differences between the first party property policies and third party liability policies ... Accordingly, we intimate no view as to the application of our decision in either the third party liability or commercial liability (including toxic tort) context." 51 Cal.3d at 679, 274 Cal.Rptr. 387, 798 P.2d 1230.

Shortly before *Prudential–LMI* was decided, the Fourth District Court of Appeal adopted the manifestation trigger in a third-party insurance case. *Fireman's Fund Ins. Co. v. Aetna Casualty & Surety Co.*, 223 Cal.App.3d 1621, 1625–1628, 273 Cal.Rptr.

431 (1990). *Fireman's Fund* was followed by the Fourth District in *Pines of La Jolla Homeowners Assn. v. Industrial Indemnity,* 5 Cal.App.4th 714, 720–722, 7 Cal.Rptr.2d 53 (1992).

Two third-party cases decided after *Prudential–LMI* have applied a "continuous trigger" system where all insurers on the risk from the first exposure to the damage-causing condition must indemnify. In both of these cases, however, the California Supreme Court has granted review. *See Stonewall Insurance Co. v. City of Palos Verdes Estates,* 18 Cal.App.4th 1234, 9 Cal.Rptr.2d 663 (1992), review granted August, 1992; *Montrose Chemical Corporation of California v. Admiral Insurance Company,* 15 Cal.App. 4th 975, 20 Cal.App.4th 678, 5 Cal.Rptr.2d 358 (1992), review granted May, 1992.

■ In the absence of a determination of a particular point by the highest court of the state, a federal court is bound to follow decisions of intermediate appellate courts unless it is convinced that the highest court of the state would decide otherwise. 20 Am.Jur.2d, *Courts,* § 210. In *Chemstar, Inc. v. Liberty Mutual Ins. Co.,* 797 F.Supp. 1541, 1550–1551 (C.D.Cal.1992), Judge Hupp, after noting the conflict among the California Courts of Appeal, concluded that the Supreme Court would likely adopt the manifestation trigger in the case before *Chemstar.*

However, in *TBG, Inc. v. Commercial Union Ins. Co.,* 806 F.Supp. 1444, 1451–1453 (N.D.Cal.1990), Judge Smith, also noting the conflict among the California Courts of Appeal, held that there is no single theory of trigger universally applicable in comprehensive general liability policies for property damage. Judge Smith concluded that the courts determine the appropriate theory of trigger based on an examination of the terms of the policy and the nature of the damage. 806 F.Supp. at 1452. In the case before it, Judge Smith concluded that the most appropriate theory of trigger is the "exposure trigger" whereby coverage under the policies at issue was triggered every time that there was a release of the hazardous substance.[1]

■ After review of these cases and theories, the court concludes that the California Supreme Court will adopt the "manifestation trigger" of coverage under the circumstances alleged in the Modesto Complaint.[2] Similarly to the circumstances at issue in *Chemstar,* the Modesto Complaint's allegations establish that the contamination did not occur immediately upon exposure. Moreover, the court is persuaded that the manifestation trigger satisfies both the reasonable expectation of the insureds and the need for greater certainty for insurers.

2. *Application of Manifestation Trigger.*

■ Because the only evidence presented by the parties concerning the facts and circumstances underlying the Modesto Com-

1. Before the California Supreme Court decided *Prudential–LMI,* the Ninth Circuit concluded that the California Supreme Court would not adopt either the manifestation trigger or the continuous trigger in a third-party case involving bodily injury but, rather, the exposure trigger. *Hancock Laboratories, Inc. v. Admiral Insurance Co.,* 777 F.2d 520, 522–525 (9th Cir.1985). However, in reaching this conclusion the Ninth Circuit relied almost entirely on decisions from other federal courts of appeal and not on California law. Moreover, the intervention of *Prudential–LMI* makes the conclusion in *Hancock Laboratories* questionable authority as a predictor of the ultimate decision by the California Supreme Court.

2. In reaching this conclusion the court rejects Ag Production's alternative argument that the policy is ambiguous because the manifestation theory of coverage cannot be determined from the terms of the policy. The court believes that in attempting to fashion an ambiguity, Ag Production ignores the need for an "occurrence" and the definition of "occurrence" under the policy. These terms are not ambiguous.

The court also rejects Ag Production's suggestion that the conflict among the California cases concerning the appropriate trigger means that there is a potential for coverage sufficient to invoke the duty to defend. However, the California Supreme Court has recently questioned that a purely legal question of policy interpretation is the sort of potential for coverage envisioned by *Gray v. Zurich Insurance Co., supra. Montrose Chemical Corporation of California v. Superior Court of Los Angeles County,* 6 Cal.4th 287, 303 n. 5, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). Here, the court concludes that it is faced with a question of law which may be resolved in these proceedings. Therefore, the fact that another court may reach a different conclusion does not create a potential for coverage within the meaning of the duty to defend.

plaint are those alleged in the Modesto Complaint, it is clear that Houston is entitled to summary judgment in its favor that it has no duty to defend or indemnify defendants in the Modesto Complaint. The allegations make clear that the contamination manifested itself approximately two years before the Houston policy was issued. Therefore, no property damage occurred during the policy period.

### 2. *Waiver.*

■ Ag Production argues that Houston's failure to raise the defense that the manifestation trigger precludes coverage in its reservation of rights letter constitutes a waiver of Houston's right to rely on it now. In so arguing, Ag Production refers the court to *Intel Corp. v. Hartford Acc. & Indem. Co.,* 952 F.2d 1551, 1559 (9th Cir.1991).

In *Intel Corp.,* the Ninth Circuit held in pertinent part:

> Under California law, waiver is a question of fact. Waiver is an affirmative defense, for which the insured bears the burden of proof....
>
> California courts will find waiver when a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished....
>
> In the insurance context, however, the waiver doctrine has developed somewhat differently, and the distinction between waiver and estoppel has been blurred. In cases where waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured....

Given this standard, the court rules that Ag Production has not shown a waiver or raised a genuine issue of material fact concerning a waiver. The reservation of rights letter sent in this case that "[t]here is no indication of [sic] any of the alleged property damage took place during the policy period or that such property damage was caused by an occurrence." This language clearly indicates that denial of the claim was because of Houston's conclusion that the policy did not provide coverage. The fact that the legal

theory upon which it relies in making this statement was not articulated cannot be seen as a waiver of the right to do so. In any event, there is no showing of misconduct by Houston or detrimental reliance by Ag Production. Ag Production appears to suggest that it has been misled because Houston's motion for summary judgment relies solely on the manifestation trigger theory to deny coverage and does not discuss any of the other grounds set forth in the reservation of rights letter for denial of coverage. Ag Production implies that it has been prejudiced because it moved for summary judgment with respect to these other grounds and not the manifestation trigger theory. However, even if this were true, there is no detrimental reliance or misconduct involved here. Ag Production is represented by competent counsel. Counsel could not fail to be aware of the split of authority and the manifestation trigger theory of coverage in these types of cases.

### B. *Personal Injury.*

■ Ag Production argues that their is a duty to defend because there is a potential for coverage under the personal injury provision of the policy. In so arguing, Ag Production refers the court to *Hirschberg v. Lumbermens Mutual Casualty,* 798 F.Supp. 600, 604–605 (N.D.Cal.1992).

In *Hirschberg,* an action brought by insureds against a comprehensive general liability insurer seeking a declaration that the insurer had a duty to defend in a suit alleging contamination of property by hazardous waste, Judge Walker held that the definition of personal injury which included the phrase "wrongful entry or eviction or other invasion of the right of private occupancy" created a potential for coverage because of causes of action based on nuisance and trespass in the third-party complaint. In so holding, Judge Walker held that the phrase was ambiguous and any ambiguity is to be resolved against the insurer and in favor of coverage. Judge Walker further held:

> In addition, ... California courts have defined trespass as 'an invasion of the interest of exclusive possession of land.' ...

Nuisance has been defined as an 'interference with the interest in the private use and enjoyment of land.' ... [T]he First Circuit held that allegations 'sounding in "trespass or nuisance" ' were covered because the policy defined personal injury as 'wrongful entry or eviction or other invasion of the right of private occupancy,' language identical to the Policy here.

Further, commentators have recognized that in the context of personal injury coverage of general comprehensive liability policies, the 'invasion of the right of private occupancy' affords coverage 'for interference with possession and enjoyment by means such as noise, leaky roofs, obstruction of access, obnoxious fumes, ... actionable on a variety of theories such as ... nuisance, or trespass.' ... Since the underlying complaint alleges claims for interference with WSA's 'comfortable use and enjoyment of the property,' there exists the potential for coverage, and correspondingly, a duty to defend.

Here, the Modesto complaint alleges causes of action for continuing trespass and continuing nuisance. It is alleged that the plaintiffs own water systems and numerous parcels of real property and easements overlying an aquifer which contain wells. It is further alleged that plaintiffs possess and actively exercise rights to appropriate and use groundwater drawn from this property and surface water rights.

Houston, pointing to these allegations in the Modesto complaint and to the fact that the definition of personal injury in the Houston policy does not include the "invasion of the right of private occupancy" as was the case in the policy at issue in *Hirschberg*, argues that *Hirschberg* is not applicable. Because the duty to defend is based on the facts alleged in the complaint or known extrinsic facts, *Gray v. Zurich Insurance Co., supra*, 65 Cal.2d at 276–277, 54 Cal.Rptr. 104, 419 P.2d 168, Houston argues that the Modesto complaint seeks recovery for damage to tangible property and its related loss of use, damages included within the definition of "property damage" under the Houston policy.

The court rules that *Hirschberg* has no relevance to the policy provision at issue here. The definition of personal injury in the Houston policy, clearly and unambiguously in the court's opinion, involves coverage for loss of use of a dwelling place or other personal residence or business premises. It simply cannot be construed to include water systems and aquifers.

ACCORDINGLY, IT IS ORDERED that Houston General Insurance Company's Motion for Summary Judgment is granted. IT IS FURTHER ORDERED that Ag Production Company and Chemurgic Agricultural Chemicals, Inc.'s Motion for Summary Judgment is denied.

JUDGMENT FOR PLAINTIFF TO BE ENTERED.