[No. G021514. Fourth Dist., Div. Three. Mar. 17, 2000.]

STERLING BUILDERS, INC., et al., Plaintiffs and Appellants, v. UNITED NATIONAL INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

O'Melveny & Myers, Michael G. Yoder and Robert G. Loewy for Plaintiffs and Appellants.

A. Raymond Hamrick III and Raymond C. Dion for Defendant and Respondent.

**OPINION**

**RYLAARSDAM, J.**—Third party claimants sued an insured under a commercial general liability policy contending the insured had lied about its intentions to perform certain acts in return for the claimants granting it an

easement over their property. The insured tendered the defense to its insurer; the latter refused to defend. We agree with the trial court that such a claim is not insured under a clause covering "wrongful entry or eviction or other invasion of the right of private occupancy." In affirming the judgment, we acknowledge that a dictum in this court's opinion in *General Accident Ins. Co. v. West American Ins. Co.* (1996) 42 Cal.App.4th 95, 104 [49 Cal.Rptr.2d 603], to the effect that a "noninvasive interference with the use and enjoyment of property" may constitute an "other invasion" under such an insuring clause, is erroneous.

## FACTS

Joseph Caldwell and his wife sold 19 acres in the Chino Hills to Sterling Builders, Inc. Sterling intended to develop the property. In return for the land, the Caldwells received about $2.7 million, $500,000 in cash and the remainder in the form of a promissory note. About the same time, Sterling bought a six-acre parcel located adjacent to the parcel purchased from the Caldwells. Approximately two years later, the Caldwells and Sterling entered into a joint venture agreement to develop both parcels. The Caldwells received a 14.43 percent interest in the joint venture in return for forgiveness of $500,000 then due on the note.

The following year, the Caldwells and Sterling entered into another agreement wherein the Caldwells reacquired the 19 acres in return for a deed in lieu of foreclosure. Concurrently, Robert Lintz, Sterling's sole shareholder, agreed to make specified payments to the Caldwells and to pay for property taxes, insurance, and certain other obligations incident to ownership of the property. The Caldwells later asserted that Sterling had requested this transfer to provide it with certain benefits, and that the parties had agreed the property would subsequently be transferred back to the joint venture.

About 10 months thereafter, at Sterling's request, the Caldwells also took title to the adjacent six-acre parcel. At the same time, William Dohr, one of Sterling's officers, told the Caldwells that Sterling needed easements burdening the 19-acre parcel to enable Sterling to begin development of the parcels. In exchange for the easements, Dohr promised the Caldwells that Sterling would make a payment of $360,000, which was about to come due, and that the joint venture would, at some future time, take back title to the properties as previously agreed. In reliance on these promises, the Caldwells granted slope, landscaping, landscape maintenance, highway and road easements over their property.

After another two years passed, and Sterling having failed to keep its promises, the Caldwells sued Sterling, Lintz, and Dohr (hereafter collectively Sterling, unless the context indicates otherwise), asserting inter alia

that Sterling never intended to fulfill the obligations it assumed in return for granting the easement. The Caldwell's seventh cause of action alleged that in granting the easements, they had been deprived of valuable property rights.

Sterling requested a defense of the Caldwells' suit from its commercial liability insurer, United National Insurance Company. Not having heard from United National, six months later Sterling filed the instant action for declaratory relief, breach of contract and bad faith. United National prevailed in a battle of cross-motions for summary adjudication on the duty to defend the issue, and the parties thereafter stipulated to a dismissal with prejudice of the balance of Sterling's causes of action, resulting in a final, appealable judgment.

## Discussion

■ Sterling contends that a clause in the personal injury endorsement of United National's policy defining "personal injury" to include "wrongful entry or eviction or other invasion of the right of private occupancy" afforded at least the possibility of coverage of the underlying Caldwell action, and hence gave rise to a duty to defend.

The typical situation for a "wrongful entry or eviction or other invasion of the right of private occupancy" to occur is a trespass onto the claimant's real property. This court's decision in *General Accident Ins. Co. v. West American Ins. Co., supra,* 42 Cal.App.4th 95 is illustrative. There, partners were alleged to have literally "ousted" and "ejected" the part owner of a small business from his physical office space. This court held that such allegations constituted an invasion of the private occupancy right. (*Id.* at p. 105.) Similarly, *Martin Marietta Corp. v. Insurance Co. of North America* (1995) 40 Cal.App.4th 1113 [47 Cal.Rptr.2d 670] held that a pollution cleanup claim was such an invasion because the "migration of pollutants from one property to another may constitute a trespass." (*Id.* at p. 1132.)

In contrast, claims that do not involve the physical occupation of or trespass upon real property are not within the meaning of the phrase, even though the claim may entail interference with rights relating to such property. *Tinseltown Video, Inc. v. Transportation Ins. Co.* (1998) 61 Cal.App.4th 184 [71 Cal.Rptr.2d 371] held that a partnership dispute involving the transfer of the physical assets of a video store did not constitute an invasion of the right of private occupancy. (*Id* at pp. 196-197.) There, the partners-policyholders' trespass was against the claimant's partnership rights; there, was no invasion of the partnership's real property. Similarly, in *Wilmington Liquid Bulk Terminals, Inc. v. Somerset Marine Inc.* (1997) 53 Cal.App.4th

186 [61 Cal.Rptr.2d 727], the clause afforded no coverage for the breach of a contract to build a dock for a cement shipper because the " 'invasion' " was "no more than an interference with an expectancy of future use . . . under an executory contract." (*Id.* at p. 196.)

In *Fibreboard Corp. v. Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 512 [20 Cal.Rptr.2d 376], the court stated the "other invasion" language implicates a "trespass paradigm." *Fibreboard* held that there was no invasion when the insured put asbestos products into the stream of commerce even if the products, when physically incorporated into various structures, ultimately resulted in displacing the claimants from their real property. The court reasoned that the policyholder was not guilty of a "direct or indirect entry or intrusion . . . upon the plaintiffs' lands." (*Ibid.*; see also *Nichols v. Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 776 [215 Cal.Rptr. 416] [no coverage for airwave piracy claim involving sale of devices to intercept cable television signals because the complaint alleged "no invasion of any interest attendant to the possession of real property"].)

Sterling argues an easement "by definition constitutes a non-physical invasion of the right of private occupancy." As such, Sterling's allegedly obtaining the easements by fraud supposedly "interfered with the Caldwells' *right* to use and possess their property." But there is no such thing as a nonphysical invasion of a right of private occupancy. "Occupancy" requires a physical entry upon real property. Here there are no allegations Sterling invaded or trespassed upon the Caldwell's servient estate. Rather, Sterling simply obtained one of the "bundle of sticks" constituting Caldwell's ownership *rights* in their land.

*Stein-Brief Group, Inc. v. Home Indemnity Co.* (1998) 65 Cal.App.4th 364 [76 Cal.Rptr.2d 3] shows there must be an occupation of the real property, as distinct from a mere affecting of a right related to real property, before an invasion takes place. In *Stein-Brief*, a developer assumed a contractual duty to prevent a certain parcel from having more than a one-story house built on it. The developer allegedly breached the agreement, and allowed a two-story building to be built on the property. There was no coverage under the "invasion" language, because, although the claimant's property was affected, there was no actual occupation of his property. The court said the "other invasion" clause " 'connotes disruptions of the ability to actually occupy [the claimant's] property.' " (*Id.* at p. 373.)

In its brief, Sterling derives comfort from two cases from other jurisdictions that have deviated from the requirement of a physical occupation of or

incursion onto real property, *Town of Goshen v. Grange Mut. Ins. Co.* (1980) 120 N.H. 915, 917 [424 A.2d 822, 824] and *American States Ins. Co. v. Canyon Creek* (N.D.Cal. 1991) 786 F.Supp. 821, 825 and from this court's dictum in *General Accident Ins. Co. v. West American Ins. Co.*, *supra*, 42 Cal.App.4th 95, which uncritically cited these cases. As we shall explain, the analyses contained in *Town of Goshen* and *American States* do not bear up under scrutiny. As a result the dictum in *General Accident* lacks foundation.

In *Town of Goshen* a developer sued the insured, a local government, for delay in the approval of a subdivision application which had prevented him from using his property as planned. The town sought insurance coverage for the suit. The trial court ruled for the town, and the New Hampshire Supreme Court affirmed in a short *per curiam* decision which held that a "regulatory obstacle to the use of real property" could fall within the "other invasion" language. (*Town of Goshen v. Grange Mut. Ins. Co.*, *supra*, 424 A.2d at p. 824.) However, the opinion is particularly unenlightening; it fails to explain how the court reached its conclusion.

The decision consists of 10 paragraphs. The first five paragraphs merely relate the facts and quote the relevant contract terms: The town had passed certain regulations which created "economic hardships" that destroyed the viability of a developer's project, the town was being sued, and it had an insurance policy which provided personal injury coverage. (*Town of Goshen v. Grange Mut. Ins. Co.*, *supra*, 424 A.2d at p. 823.) The sixth paragraph sets up the issue as framed by the insurer, i.e., whether the absence of any invasion upon the land precluded coverage, and juxtaposed that issue with the trial court's ruling finding coverage. The opinion does not explain how or why the trial court concluded there was coverage.

The seventh paragraph of the opinion consists of three sentences and contains the actual ruling. The first sentence is a topic sentence giving the court's conclusion, stating it was rejecting the insurer's argument: "We cannot accept [the insurer's] argument that an appreciable and tangible interference with the physical property itself is necessary to constitute an 'invasion of the right of private occupancy.' " (*Town of Goshen v. Grange Mut. Ins. Co.*, *supra*, 424 A.2d at p. 824.)

The entire weight of the court's reasoning is carried by the second sentence of the seventh paragraph. But instead of giving a reason why it could not accept the insurer's argument, the court relies on its raw authority: "We are of the opinion that the allegations in the complaint would constitute the required 'invasion of the right of private occupancy.' " (*Town of Goshen v. Gange Mut. Ins. Co.*, *supra*, 424 A.2d at p. 824.) That is the sum total of

the court's "analysis." The third sentence merely reiterates the third party allegations, without any attempt to connect the language of the policy to those allegations. Nor do the final three paragraphs, which hold that a decision in favor of coverage was not precluded by the developer having based its action against the city on a federal civil rights statute (42 U.S.C. § 1983), explain why a decision in favor of coverage was merited in the first place.

In sum, the *Town of Goshen* opinion never explains why land use regulations could constitute an invasion of real property. The court merely put the words "we are of the opinion" in front of its conclusion.

The federal district court's opinion in *American States* has more to commend it, though it still fails to demonstrate that the other invasion of the right of private occupancy can encompass a noninvasive interference with legal rights. The underlying case in *American States* involved misrepresentations relating to real property transactions. The claimants, a group of mobile home purchasers, claimed they had been duped into believing they would own the land beneath their homes. When they found that they did not, they sued the seller. Most of the opinion consists of a discussion of whether the claim against the seller could fall within the "advertising injury" coverage of the policy and held that it did.

As an additional holding the *American States* court concluded the phrase "other invasion" was ambiguous. Specifically, the court noted that the insurance policy had not expressly limited the meaning of "invasion" to "physical" invasions. (*American State Ins. Co. v. Canyon Creek, supra,* 786 F.Supp. at p. 828.) The court then reasoned that, because it had to resolve any ambiguity against the insurer, the clause provided coverage for the claim. (See *American States Ins. Co. v. Canyon Creek, supra,* 786 F.Supp. at p. 829.) However, for a contract to be ambiguous it must be susceptible to at least two different reasonable interpretations (see, e.g., *Southern Cal. Edison Co. v. Superior Court* (1995) 37 Cal.App.4th 839, 848 [44 Cal.Rptr.2d 227]); the *American States* court failed to identify what those reasonable interpretations were, other than to intimate there could be both physical and nonphysical invasions of real property, thus, as in *Town of Goshen,* adopting the concept of "nonphysical invasion" by judicial fiat.

Significantly, *American States,* which was based on California law, (*American States Ins. Co. v. Canyon Creek, supra,* 786 F.Supp. at p. 825) was decided prior to our Supreme Court's watershed insurance law decision in *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545]. *Bank of the West* rejected the view that anytime there is

an ambiguity the policyholder must automatically win. (*Id.* at pp. 1264-1265.) Contract terms are not ambiguous in a vacuum; they must be examined in context. (*Id.* at p. 1265.) Even when there is an ambiguity in an insurance contract, the ambiguous term must still comport with a policyholder's "objectively reasonable expectations." (*Ibid.*)

In *General Accident Ins. Co. v. West American Ins. Co.*, *supra*, 42 Cal.App.4th 95, although not necessary to our decision, we stated that "[t]hese claims [i.e. claims under the 'wrongful entry or eviction or other invasion' clause of the personal injury endorsement] have included . . . noninvasive interferences with the use and enjoyment of property." (*Id.* at pp. 103-104.) It is true that the cases we cited in support of this statement (*Town of Goshen* and *American States*) *did* include noninvasive interferences or nonphysical invasions. However, to the extent that our statement indicated approval of the holdings in these cases, we were mistaken.

"Invasion" denotes an incursion, not a misrepresentation. The Oxford English Dictionary provides these variations of meaning to the word "invasion": "1. a. The action of invading a country or territory as an enemy; an entrance or incursion with armed force; a hostile inroad"; "b. [figuratively] A harmful incursion of any kind, e.g. of the sea, of disease, moral evil, etc."; "c. [in pathology] The spreading of pathogenic microorganisms or malignant cells that are already in the body to new sites"; "2. Infringement by intrusion; encroachment upon the property, rights, privacy, etc[.] of any one. Esp. in phr. *invasion of privacy*"; "3. Assault, attack (upon a person, etc.)"; and "4. [in ecology] The spread of a plant or animal population into an area formerly free of the species concerned." (8 Oxford Eng. Dict. (2d ed. 1989) at p. 37, original italics.) Even the most figurative of these definitions ("harmful incursion") still entails the idea of going *into* something, rather than obtaining that something by fraud, or, as in *American States*, tricking people into believing they had a right they never had in the first place.

The Caldwells were not damaged by a trespass (see *Fibreboard*), an entry or an intrusion (*Wilmington Liquid Bulk Terminals*), nor as a result of an actual occupation of real property (*Stein-Brief*). Their damages were caused by Sterling fraudulently obtaining an interest *in* the real property. These facts constitute a transaction, not a trespass.

There being no coverage under the terms of the insurance policy, our conclusion stands regardless of whether the underlying claim was pleaded in contract or tort. (Cf. *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 838-841 [88 Cal.Rptr.2d 366, 982 P.2d 229] [overturning long line of Court

of Appeal insurance decisions holding that the phrase "legally obligated to pay as damages" could *only* refer to liability in tort and never in contract].) The trial court did not err in entering judgment for United National.

## Disposition

The judgment is affirmed. Respondent shall recover its costs.

Sills, P. J., and Crosby, J., concurred.