

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-21-2001

# New Castle County v. Natl Union Fire Ins

Precedential or Non-Precedential:

Docket 00-5157

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"New Castle County v. Natl Union Fire Ins" (2001). *2001 Decisions.* Paper 57.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/57

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 21, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5157

NEW CASTLE COUNTY DE,

     Appellant

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. No. 96-cv-00504)
District Judge: The Honorable Roderick R. McKelvie

Argued: October 31, 2000

BEFORE: SCIRICA, NYGAARD, and BARRY,
Circuit Judges.

(Filed: March 21, 2001)

     Richard E. Poole, Esq.
     Peter J. Walsh, Jr., Esq. (Argued)
     Potter, Anderson & Corroon
     1313 Market Street
     P.O. Box 951
     Wilmington, DE 19899
      Counsel for Appellant

        Christopher J. Sipe, Esq. (Argued)
        Bailey & Wetzel
        716 Tatnall Street
        P.O. Box 2034
        Wilmington, DE 19801
         Counsel for Appellee

        Daniel E. Troy, Esq.
        Wiley, Rein & Fielding
        1776 K Street, N.W.
        Washington, DC 20006
         Counsel for Amicus-appellee
        INS ENV Litigation

OPINION OF THE COURT

NYGAARD, Circuit Judge.

This appeal requires us to interpr et the phrase, "invasion
of the right of private occupancy," under Delawar e law and
determine whether it is ambiguous. The phrase is widely
used in insurance policies and has been the subject of
heated litigation throughout the entire country over the
past thirty years. Because Delaware case law pr ovides no
clear precedent, both parties cite numer ous decisions
outside the state. Some authority suggests that we should
apply the doctrine of ejusdem generis and construe the
phrase in relation to the more specific terms ("wrongful
eviction" and "wrongful entry") pr eceding it. Such a ruling,
however, would fly in the face of commonsense and declare
unambiguous a term that has generated hundr eds of law
suits and widely varying judicial interpretations. We refuse
to do that, and instead hold that an "invasion of the right
of private occupancy" is ambiguous and should be
construed in favor of New Castle County. We therefore
reverse the District Court's grant of summary judgment.

I.

New Castle County is a political subdivision of the State
of Delaware. It is responsible for , among other things, the
permitting and zoning of real property within its

                              2

geographical borders. In order to pr otect itself, its officials, and its employees from legal liability, it is common practice for New Castle to purchase insurance. Between 1991 and 1993, New Castle purchased a number of policies from National Union Fire Insurance Company of Pittsburgh, Pennsylvania. The policies were of two general types: (1) Public Officials Liability ("POL") and (2) Commercial and General Liability ("CGL"). This appeal focuses on a CGL policy that New Castle purchased from National Union to cover the period from July 1, 1992 to July 1, 1993.

The parties disagree whether National Union has an obligation to defend and indemnify New Castle in a number of law suits arising from zoning and per mitting decisions. In 1992, a Delaware real estate developer named Frank Acierno filed the first of three complaints, which eventually cost the County approximately one million dollars in legal expenses to defend.

Acierno owns two tracts of land within New Castle County. The first is located near a shopping mall and the second is referred to as Westhampton. In 1992, New Castle frustrated Acierno's plans to develop both tracts. First, it denied a building permit for the mall pr operty, and second, it voided Acierno's record plan for the Westhampton property and instead rezoned it.

On July 1, 1992, Acierno filed his first suit, contesting the denial of the building permit for the mall property ("Acierno I"). He claimed, under 42 U.S.C. S 1983, that New Castle had deprived him of property without due process of law, and had violated the Equal Protection Clause of the Fourteenth Amendment by arbitrarily treating him differently than other developers. The District Court granted preliminary injunctive relief in favor of Acierno. See Acierno v. Mitchell, 1992 WL 694590 (D. Del. 1992). We reversed, holding that the case was not ripe because the County Board of Adjustment had yet to rule on the building permit. See Acierno v. Mitchell, 6 F.3d 970 (3d Cir. 1993).

One day after filing his first claim, Acier no filed a second suit, this time challenging New Castle's actions r egarding the Westhampton property ("Acierno II"). He again claimed he had suffered due process and equal protection

violations. A complicated series of rulings followed.[1]
Eventually, the District Court granted summary judgment
in favor of the County on most of Acierno's claims. A
number of his claims, however, remain undecided.

Acierno filed his third suit on December 17, 1993
("Acierno III"). In it, he ar gued that his claim in Acierno I
(regarding the mall property) had become ripe, because the
County Board of Adjustment had refused to issue a
building permit. The District Court again granted a
preliminary injunction in his favor. See Acierno v. New
Castle County, 1994 LEXIS 1683 (D. Del. 1994). W e
reversed and remanded the case for further proceedings.
See Acierno v. New Castle County, 40 F .3d 645 (3d Cir.
1994). On October 24, 1997, the parties settled Acierno III
with an agreement requiring New Castle to issue a building
permit for the mall property and pay Acierno's attorneys'
fees up to $250,000.

Shortly after Acierno filed his claims, the County
attempted to contact National Union to discuss the POL
and CGL policies. After almost a year of unsuccessful
inquiries by New Castle, National Union sent a letter on
June 25, 1993 stating that Acierno's claims"would not be
covered under the CGL policy." However , on July 9, 1993,
National Union indicated that it would tentatively
undertake New Castle's defense under the POL policy. Its
letter noted, in some detail, that National Union was not

_____

1. First, the District Court granted summary judgment to the County on
the procedural due process claims. It denied summary judgment,
however, as to all other claims, including those against the individual
County officers who had sought legislative or qualified immunity. See
Acierno v. Cloutier, 1993 WL 215133 (D. Del. 1993). They appealed to
this Court. A panel of the Third Circuit r eversed the denial of summary
judgment to former officers, but found jurisdiction lacking in respect to
the current officers. Upon motion for r ehearing, this Court, sitting en
banc, vacated the panel decision, held that ther e was jurisdiction over
both current and former officers, and r eversed the District Court's
denial
of summary judgment to them. See Acierno v. Cloutier, 40 F.3d 597 (3d
Cir. 1994). The District Court conducted further proceedings, and on
May 23, 2000, it granted summary judgment to the County on some of
Acierno's outstanding claims. See Acier no v. New Castle County, C.A. No.
92–385 (D. Del. 2000).

waiving its rights to refuse coverage later . Over the following year, legal expenses mounted and in May 1994, National Union filed suit against the County, seeking a declaration that it was not obligated to continue coverage. New Castle contested the claim, but the parties eventually settled, agreeing to a buy-out of the POL policy. The agreement resolved the dispute over the POL policy, but expressly did not address the CGL policy.

On June 13, 1996, New Castle sent a letter to National Union renewing its request for coverage of its legal expenses and liability under the CGL policy. National Union denied coverage, and in response, the Countyfiled this declaratory judgment action. On December 30, 1997, the District Court granted National Union's motion for summary judgment, holding that Acierno's suit, and its associated expenses and liabilities, were not covered by the CGL policy. Specifically, the court held that National Union was only obligated to defend New Castle in suits arising from one of the policy's enumerated "personal injuries." The only arguably applicable provision, Definition 10(c), defines "personal injury" as a harm resulting from:

> c. The wrongful eviction from, wr ongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlor d or lessor; . . .

The District Court held that this definition was unambiguous and required the County to act as an "owner, landlord or lessor" of Acierno's pr operty. Because it had not, the court granted summary judgment in favor of National Union. The District Court did not addr ess whether Acierno's claims constituted an "invasion of the right of private occupancy."

New Castle appealed, and we reversed. See New Castle County v. National Union Fire Ins. Co., 174 F.3d 338, 342 (3d Cir. 1999). We held that the "by or on behalf of " language of Definition 10(c) was ambiguous and should not be construed to preclude coverage.2  We therefore remanded

_____

2. The parties disagreed over which wor ds the disputed language modified. National Union argued that the language modified the wrongful

the case to determine whether New Castle's alleged actions could constitute an "invasion of [Acier no's] right of private occupancy." Id. at 352. The District Court, on remand, again ruled against the County, granting summary judgment in favor of National Union. It held that the plain meaning of the "invasion" language was ambiguous, but that its context suggested it "should be construed to encompass only those actions of the same general type or class as `wrongful eviction' and `wr ongful entry.' " Because Acierno failed to allege an eviction, wr ongful entry, or similar injury, the District Court held that the CGL policy did not apply. New Castle appealed.

II.

Jurisdiction is premised upon diversity of citizenship. Therefore, we must apply the substantive law of Delaware. See Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The sole issue for review is whether Acierno's claims, if true, constitute an "invasion of [his] right of private occupancy." If they do, the CGL policy requires National Union to cover the County's legal expenses and liability. This is a legal question of contractual interpretation. Because the Delawar e Supreme
_____

acts. Under its interpretation, an eviction, entry, or invasion must be committed by the "owner, landlord or lessor" of the premises. At oral argument, counsel for National Union suggested that a proper reading of the definition required one to stop and"breathe" between the words "occupies" and "by." The same ef fect is achieved by ignoring a number of words:

>       The wrongful eviction from, wrongful entry into, or invasion of the
>       right of private occupancy of a room, dwelling or premises . . . by

or

>       on behalf of its owner, landlord or lessor; . . .

New Castle, on the other hand, argued that the language modified the words that immediately preceded it ("that a person occupies"). According to New Castle, the disputed language described "the possessory interest of the person aggrieved." New Castle Co., 174 F.3d at 346. The wrongful acts must be committed against a person who has the right to occupy the premises. We found both interpretations reasonable, and therefore held the language was ambiguous.

6

Court has yet to address the issue directly, we must predict how it would rule. See New Castle County v. National Union Fire Ins. Co., 174 F.3d 338, 342 (3d Cir. 1999); Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 766 (3d Cir. 1994).

The District Court construed the CGL policy narr owly and granted summary judgment in favor of National Union. Our review of the District Court's grant of summary judgment is plenary. See New Castle County, 174 F.3d at 342; Pacific Indem. Co. v. Linn, 766 F .2d 754, 760 (3d Cir. 1985).

## A. Delaware Insurance Law

This is the second time that we have reviewed allegedly ambiguous language in Definition 10(c) of the CGL policy. See New Castle County, 174 F.3d at 344-51. The previous panel's discussion of Delaware law pertaining to insurance policy interpretation is a good starting point for our analysis:

> Before an insurer is obligated to defend or indemnify a policyholder, the insured must demonstrate that coverage is available under the policy. An insur er's duty to defend is broader than its duty to indemnify, but `is limited to suits which assert claims for which it has assumed liability under the policy.' `[W]here there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insur ed.' Most importantly therefore, an insurer is `required to defend any action which potentially states a claim which is covered under the policy.' Thus, in this case, if the Acierno actions potentially state a claim that is covered under definition 10(c), National is requir ed to defend the county in those actions.
>
> Whether the Acierno actions potentially state a claim for which National has assumed liability depends upon how we interpret definition 10(c). As a basic matter, Delaware law requires us to interpr et insurance contracts `in a common sense manner.' W e must also

7

examine the disputed language in the context of the entire policy.

`Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it,' because `creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties ha[ve] not assented.' When policy language is ambiguous, however, under Delaware law this Court must apply the doctrine of contra proferentem . That is, ambiguous language must be construed against the drafter and in conformance with the reasonable expectations of the insured.

The premise underlying the principle of contra proferentem is that an insurance contract is one of adhesion. As the Delaware Supreme Court r ecently explained,

[T]he insurer . . . is the entity in control of the process of articulating the terms [of an insurance contract]. The other party . . . usually has very little to say about those terms except to take them or leave them or to select from limited options of fered by the insurer. . . . Therefor e, it is incumbent upon the dominant party to make the terms clear . Convoluted or confusing terms are the pr oblem of the insurer . . . not the insured. . . .

As noted earlier, due to the insurer's dominant position, when an ambiguity is found in insurance policy language, we must construe the language against the insurer as a matter of Delawar e law. And therefore, unlike with other types of contracts, we need not inquire into the parties' actual intent.

Because ambiguous language is construed against the insurer as a matter of law, we take special note of Delaware law for determining whether language is ambiguous. `The settled test for ambiguity is whether the provisions in controversy are r easonably or fairly susceptible of different interpretations or may have two or more different meanings.' An insurance policy is not ambiguous, however, `merely because two conflicting

8

interpretations may be suggested. Rather , both
interpretations must reflect a r easonable reading of the
contractual language.' Thus, we must examine, not
only whether the county's reading of definition 10(c) is
possible, but also whether it is reasonable.

New Castle County, 174 F.3d at 342-44 (citations omitted).
Thus, in order to assess National Union's obligations,
Delaware law requires us to ask whether the Acierno suits
potentially state a claim under Definition 10(c) of the CGL
policy. See id. at 343. We must answer in the affirmative if
the language of the policy is ambiguous as to its coverage
of the specific claims. An insurance policy is ambiguous if
there is more than one reasonable interpretation of its
terms. The Delaware Supreme Court has not addressed
whether an "invasion of the right of private occupancy" is
ambiguous, and both parties agree that lower court
opinions in the state provide no clear answer . As a result,
we must look outside of Delaware, to other state court
decisions and relevant public policy, to r each a decision.3

B. Non-Delaware Precedent

State courts outside of Delaware have disagr eed over
whether an "invasion of the right of private occupancy" is
ambiguous. A number of state courts have found the
disputed language unambiguous, suggesting that it is
inapplicable to Acierno's claims. A smaller , but not
insignificant, number of decisions have held the opposite --
that an invasion of the right of private occupancy is
ambiguous and must therefore be construed liberally.

Of the decisions that hold the language to be
unambiguous, most adopt one of three lines of r easoning.
These approaches, however, are not sharply defined and
often blur. The first and perhaps most commonly employed
strategy is to examine the context in which the phrase is
used (it almost always follows some variation of"wrongful
eviction" and "wrongful entry"). States cite the Latin maxim
_____

3. Both parties refer extensively to dictionary definitions and the "plain
meaning" of the terms. Not surprisingly, their arguments conflict and are
ultimately inconclusive. As a result, we find this discussion unhelpful.

9

"ejusdem generis," a tool of construction that applies when a general term or phrase follows an enumeration of specific offenses.4 Ejusdem generis requires courts to construe the general phrase narrowly, so that it relates only to offenses of the same kind or class as those specifically enumerated. As the Delaware Supreme Court clearly articulated over eighty years ago in Donaghy v. State, 100 A. 696, 707 (Del. 1917):

> The doctrine of ejusdem generis . . . is a rule of statutory construction . . . that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. . . . [S]uch a rule is based on the obvious r eason that if it was intended that the general words should be used in their unrestricted sense, no mention would have been made of the particular classes.

See also Triple C Railcar Serv., Inc. v. City of Wilmington, 630 A.2d 629, 631 (Del. 1993). Applying ejusdem generis would limit the right of private occupancy to of fenses, similar to eviction or wrongful entry, that include a violation of the claimant's possessory inter est in real property. See Groshong v. Mutual of Enumclaw Ins. Co., 329 Or. 303, 312–14 (1999) ("[T]he phrase,`other invasion of the right of private occupancy' applies only to of fenses that involve a possessory interest in the pr emises at issue.").5

_____

4. They also cite a "related" canon of construction, noscitur a sociis. Only
the amicus, however, presents a case that applies the concept. In City of Delray Beach, 85 F.3d at 1534, the Eleventh Circuit refers to a Florida state court decision that suggests that the two Latin maxims are more than simply "related":

> [Ejusdem generis] is actually an application of the broader maxim `noscitur a sociis' which means that general and specific words capable of analogous meaning when associated together take color from each other so that the general wor ds are restricted to a sense
analogous to the specific words.

Thus, noscitur a sociis is simply a br oad form of ejusdem generis and requires no additional analysis.

5. In addition to Oregon, other states that have utilized ejusdem generis in a similar context include Wisconsin, Florida, Massachusetts, Indiana,

10

Because Acierno's claims do not allege a violation of his possessory interest, adopting this appr oach would require us to rule in favor of National Union.

There is a critical distinction, however , between this case and most of the decisions that apply ejusdem generis. Almost all of the precedent invoking the Latin maxim involve insurance policies that include the phrase "other invasion of the right of private occupancy." Some courts have explicitly focused on the presence of the word "other":

_____

Michigan, Illinois, Oklahoma, California, and New York. See United States v. Security Mgmt. Co., Inc., 96 F .3d 260, 264 n.4 (7th Cir. 1996) (applying Wisconsin law and holding that "[t]he ejusdem generis rule makes clear that [a] right of occupancy must exist before an individual may be said to have suffered an `invasion of the right of private occupancy' "); City of Delray Beach, Florida v. Agricultural Ins. Co., 85 F.3d 1527, 1534 (11th Cir. 1996) (applying Florida law and holding that "when read in context, the phrase `other invasion of the right of private occupancy' means an offense tantamount to wr ongful entry or eviction and requires an impingement upon possessory rights); Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co., 91 F.3d 278, 288 (1st Cir. 1996) (applying ejusdem generis under Massachusetts law); Red Ball Leasing, Inc. v. Hartford Accident and Indem. Co., 915 F.2d 306, 312 (7th Cir. 1990) (applying ejusdem generis under Indiana law); Aetna Casualty & Surety Co. v. Dow Chemical Co., 933 F .Supp. 675, 680 (E.D. Mich. 1996) (interpreting Michigan law as adopting ejusdem generis); Martin v. Brunzelle, 699 F.Supp. 167, 170 (N.D. Ill. 1988) ("Ejusdem generis principles draw on the sensible notion that wor ds such as `or other invasion of the right of private occupancy' ar e intended to encompass actions of the same general type as, though not specifically embraced within, `wrongful entry or eviction.' "); Liberty Mutual Ins. Co. v. East Central Oklahoma Elec. Coop., 97 F.3d 383, 390–91 (Okla. 1996) ("Instead of creating an ambiguity, the ter m `invasion of the right of private occupancy' is included in insurance policies simply to provide a `catch-all' category of offenses of the same general type as "wrongful entry or eviction."); Stein-Brief Group, Inc. v. Home Indem. Co., 65 Cal.App.4th 364, 373 (1998); County of Columbia v. Continental Ins. Co., 595 N.Y.S.2d 988, 991 (1993) ("By application of the principle of ejusdem generis, the key to interpreting the phrase `other invasion of the right of private occupancy' lies in the definition of `wrongful entry' and `eviction,' both of which involve actual interference with possessory rights to real property.").

11

> [T]his court has stated that `the rule of ejusdem generis in contracts is peculiarly applicable where specific enumeration precedes the word `other' followed by general words. . . . use of the term `other' to connect the phrase `invasion of the right of private occupancy' to the wording that precedes it satisfies us that the parties intended that such invasion also be limited to claims that involve a possessory interest in the premises.

Groshong, 329 Or. at 313-14; see also, e.g., Liberty Mutual, 97 F.3d at 390; Security Mgmt., 96 F .3d at n.4 (applying ejusdem generis, but noting that its application "would have more force if the word `other' preceded the general term."). The policy at issue in this case does not include the word "other."

Neither National Union nor the amicus address this distinction, or why the principle should be applied. Instead, the amicus conclusively states, without further elaboration, that "[e]mploying the principle of ejusdem generis, rather than contra proferentem, adher es to the requirement that words be interpreted in the proper context and ensures greater fidelity to the meaning of the disputed term and the intentions of the parties to the insurance contract."6

_____

6. Contra proferentem is yet another Latin maxim, which requires that ambiguous and confusing policy language be construed against the insurer. The amicus suggests that the court must choose between applying contra preferentem and ejusdem generis. This is incorrect. Ejusdem generis is used to determine whether a phrase is ambiguous. Contra preferentem only applies after a determination of ambiguity is made. See Penn Mut. Life Ins. Co. v. Oglesby, 695 A.2d 1146, 1149-50 (Del. 1997) ("[I]f the contract . . . is ambiguous, the principle of contra
proferentem dictates that the contract must be construed against the drafter."). The County, in contrast, r ecognizes this distinction, but nonetheless argues that contra preferentem should be applied because the District Court explicitly found the disputed language ambiguous. See Appellant's brief at 26 ("[T]he District Court ignored the doctrine of contra
proferentem and construed admittedly ambiguous policy language against the insured.") (emphasis added). This is also incorrect. The District Court merely found that the "plain meaning" of the phrase was ambiguous. It then examined the context of the language, applied ejusdem generis, and held that its meaning was clear. Before we can apply contra proferentem, we must first review this holding and determine whether the disputed phrase was ambiguous.

Amicus brief at 19 n.5. This begs the question, however, of whether applying ejusdem generis in this case would help clarify the parties' intentions. See White v. Cr owley, 1986 WL 5850, *2 (Del.Super. 1986) ("As with all rules of statutory construction, [ejusdem generis] does not apply when the context shows a contrary intention. In other words, the goal of statutory construction is tofind the intent of the [contracting parties], and rules of statutory construction are merely means towar d that end."). Because National Union has failed to demonstrate, and we fail to believe, that applying ejusdem generis is r equired or even helpful, our inquiry must continue.

Under the second approach, some states have concluded, after reviewing the entirety of a policy, that an "invasion of the right of private occupancy" is only available in a landlord-tenant context. See Dryden Oil Co. of New England, Inc. v. Travelers Indemnity Company , 91 F.3d 278, 288 (1st Cir. 1996) ("Under Massachusetts law, then, the phrase `other invasion of the right of private occupancy' would mean `other invasion of the [tenant's] right of private occupancy,' since an actionable `wrongful entry or eviction' claim under Massachusetts law may be brought only by a tenant against a landlord.").7  There is no landlord-tenant relationship in this case. However, New Castle cites a long list of cases that have rejected this position. See Appellant's Brief at 20 n.5. There is no need to discuss each of these cases, except to note that a number of states allow a property owner, like Mr. Acier no, to bring such a claim.8

Third, some states have held that an "invasion of the right of private occupancy" requires a physical invasion,

_____

7. See also State Farm Fire & Cas. Co. v. Burkhardt, 96 F.Supp.2d 1343, 1351 (M.D. Ala. 2000) (applying Alabama law); Decorative Ctr. v. Employers Cas., 833 S.W.2d 257, 262 (T ex.App. 1992) ("The phrase `other invasion of the right of private occupancy' provides coverage only if there exists a landlord-tenant r elationship, or if the plaintiff has a vested property right.").

8. See, e.g., Royal Ins. Co. of America v. Kirksville Coll. of Osteopathic Med., 191 F.3d 959, 963 (8th Cir. 1999); Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1040 (7th Cir. 1992); Titan Holdings Syndicate, Inc. v. City of Keene, 898 F .2d 265, 272-73 (1st Cir. 1990).

such as a trespass. See Sterling Builders, Inc. v. United National Ins. Co., 79 Cal.App.4th 105, 108-09 (2000) ("[T]here is no such thing as a `non-physical invasion' of a right of private occupancy. `Occupancy' r equires a physical entry upon real property."). Accor ding to this line of reasoning, merely impinging upon a claimant's right to use or enjoy real property does not constitute such an invasion. See Columbia National Ins. v. Pacesetter Homes, Inc. , 532 N.W.2d 1, 10 (Neb. 1995) ("[T]he right of private occupancy is the legal right to occupy premises, not the right to enjoy occupying those premises.").9 Acierno does not allege a physical invasion of any sort, and therefor e his claims would not qualify.

A smaller, but not insignificant, number of decisions support New Castle's position. Although less unifor m in their approach, these decisions, in aggr egate, address each of National Union's arguments. First, some courts have held that an "invasion of the right of private occupancy" is ambiguous as a matter of law.10 The most factually relevant decisions are those of New Hampshire. In Town of Goshen v. Grange Mut. Ins. Co., 424 A.2d 822, 825 (N.H. 1980), a

_____

9. The amicus makes a related argument by distinguishing between use and occupancy. See Amicus brief at 10-16 (contending that the County's policy only covers suits arising out of harm to a claimant's occupancy, whereas Acierno's suits claim damages r elating to future use). For authority, the amicus relies primarily upon a number of Delaware statutes that refer to "use or occupancy." According to the amicus, the presence of both terms indicates that "use" and "occupancy" are distinct concepts. We find this unconvincing. In all of the examples presented, the two words consistently appear together , amidst a long list of other concepts. It is equally reasonable to conclude that the legislature used the two words as synonyms.

10. See, e.g., Beltway Mgmt. Co. v. Lexington-Landmark Ins. Co., 746 F.Supp. 1145, 1150 (D.D.C. 1990) ("The phrase `other invasion of the right of private occupancy' is ambiguous."); Gould Inc. v. Arkwright Mut. Ins. Co., 829 F.Supp. 722, 729 (M.D. Pa 1993) ("We, therefore, find that the personal injury endorsement with its coverage for `wrongful entry' and `other invasion of the right of private occupancy', is, in the context of the entire policy, . . . ambiguous."); Hirschberg v. Lumbermans Mut. Cas., 798 F.Supp. 600, 604 (N.D. Cal. 1992) ("At a minimum, the term `other invasion of the right of private occupancy' is ambiguous, and any ambiguity is to be resolved against the insur er.")

14

property owner sued a town planning boar d for refusing to allow him to develop a subdivision. He claimed civil rights violations under 42 U.S.C. S 1983. The supr eme court of the state held that the town's insurance policy, which covered suits arising from "other invasion of the right of private occupancy," was unclear. As a r esult, it construed the policy against the insurer and held that coverage extended to damages arising from the boar d's denial of "plaintiff 's right to free enjoyment of his property." See id. at 824-25. Later, the First Circuit Court of Appeals, applying New Hampshire law, held that "other invasion of the right of private occupancy" included har m resulting from "noxious odors, noise and light" that interfered with the use of property. See Titan Holdings Syndicate, Inc. v. City of Keene, New Hampshire, 898 F .2d 265, 272-73 (1st Cir. 1990). The Court noted that, "T own of Goshen does not require an allegation of physical invasion before a claim comes within coverage for liability arising fr om `other invasion of the right of private occupancy.' " Id. at 273.

Although a number of states have criticized or r efused to follow Town of Goshen, see Sterling Builders, 79 Cal.App.4th at 110-11, others have reached the same conclusion. The Supreme Court of Washington has held that both nuisance and trespass claims qualify as "other invasion[s] of the right of private occupancy." See Kitsap County v. Allstate Ins. Co., 964 P.2d 1173, 1185-86 (Wash. 1998). In Kitsap, the court noted that the"plain, ordinary, and popular meaning that an average purchaser of insurance would ascribe to the phrase `other invasion of the right of private occupancy' would include a tr espass on or against a person's right to use premises or land." Id. at 1185 (emphasis added). The court also consider ed and rejected the application of ejusdem generis .

Even California, which has almost unifor mly rejected New Hampshire's approach, has occasionally softened its interpretation of the disputed language. In Martin Marietta Corp. v. Insurance Co. of North America, 40 Cal.App.4th 1113, 1134 (1996), a state court of appeal held that" `other invasion of the right of private occupancy' is susceptible to numerous interpretations, and under California's rules of contract interpretation, it must be construed in favor of the

15

insured." The case involved environmental claims by federal and state entities against Martin Marietta.

Finally, some courts have held the language at issue is ambiguous simply because of the wide variance among judicial decisions. See Travelers Indem. Co. v. Summit Corp. of America, 715 N.E.2d 926, 937-38 (Ind. 1999) ("This disagreement among the courts further indicates the ambiguity of the personal injury provisions."). We have, in the past, adopted a similar, practical appr oach. See Little v. MGIC Indem. Corp., 836 F.2d 789, 796 (3r d Cir. 1987) ("[T]hat different courts have arrived at conflicting interpretations of the policy is strongly indicative of the policy's essential ambiguity.").

In sum, a review of relevant, non-Delawar e case law, suggests that there is a greater number of cases favoring National Union's position. However, "our job is not simply to count the number of cases on both sides," New Castle County, 174 F.3d at 347. We must instead evaluate the underlying reasoning. Reducing counsels' many arguments to their most persuasive essence, we believe that the existing non-Delaware caselaw can be characterized as follows: on one hand, a fairly large number of state court decisions apply the doctrine of ejusdem generis  and find no ambiguity; on the other, a smaller number of decisions rely upon either broad, conclusory language or narr ow, fact-specific analysis to reach the opposite r esult. We find neither approach convincing. As a result, we turn to public policy concerns and commonsense.

C. Public Policy and Commonsense

Of the three briefs submitted in this case, only the amicus attempts a public policy argument:

> [C]ourts create great uncertainty when they disregard express, unambiguous provisions defining and circumscribing the risks that the insur er agrees to cover. Failure to enforce the insurance contract as written can affect the price and availability of coverage for those who lack the resources to self-insure –- most notably, individuals and small businesses.

16

Amicus brief at 25 (citations omitted) (emphasis added). We completely agree with this statement. In fact, one would be hard-pressed to find anyone to disagree. The problem is that this statement assumes away the central issue in this case — whether the disputed policy language is ambiguous. It is beyond peradventure, as the amicus contends, that "[i]nsurance serves an important economic and social function," and courts must enforce unambiguous policy language in order to maintain its viability. The question remains, however, whether the CGL policy is unambiguous, and none of the parties provides any policy ar guments for addressing that particular question.

In our opinion, the most important and relevant observation in this case was only casually r eferenced by the District Court. The court noted:

> Insurance companies have included the clause `wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy' in their policies for at least twenty years, and litigants have repeatedly disputed the meaning of the term `invasion of the right of private occupancy.' . . .

> After at least two decades of litigation over the meaning of the term `invasion of the right of private occupancy,' courts have not arrived at a uniform definition of the term. Rather than attempt to construe the ter m `invasion of the right of private occupancy' solely based on its plain meaning, courts have concluded that the term is ambiguous, and have resorted to other techniques of contract interpretation. This court, similarly will examine the meaning of the ter m in the broader context of the CGL policy.

> Insurance companies continue to employ the ter m `invasion of the right of private occupancy' in their policies, despite twenty years of legal decisionsfinding that this term is ambiguous. It is instructive to ask why.

We also find it instructive to ask "why?" -- because we cannot conceive of an answer. The District Court concluded that insurance companies intend the disputed language to be read in context, to take meaning from the specific terms

17

it follows (almost always "wrongful eviction" and "wrongful entry"). Perhaps this is true. But even if it is, their intent has been, and continues to be, unclear.

A Westlaw search from 1973 to the present reveals 249 cases that include the phrase "invasion of the right of private occupancy." Approximately half of those decisions required a direct interpretation of the disputed language. In fact, National Union itself has been forced to litigate the meaning of the phrase on numerous occasions, and has lost at least four times.[11] Yet, in spite of this extensive history of litigation, and obvious disagreement amongst courts and parties alike, insurance companies, and National Union in particular, continue to use the phrase without any language defining its scope. Once again, we must ask, "why?"

It is well settled under Delaware law that insurance policies are contracts of adhesion. Therefore it is the responsibility of the insurer to write clear policies with adequately defined terms:

> [Insurance contracts] must be interpreted in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and limitation of coverage. It is the obligation of the insurer to state clearly the terms of the policy . . ..
>
> The policy behind this principle is that the insurer or the issuer, as the case may be, is the entity in control of the process of articulating the terms. The other party, whether it be the ordinary insured or the investor, usually has very little say about those terms

_____

11. See Kitsap County, 964 P.2d at 1184–86; Rozet v. City Ins. Co., 24 F.3d 249 (9th Cir. 1994) (unpublished decision); Great Northern Nekoosa Corp. v. Aetna Cas. & Sur. Co., 921 F.Supp. 401, 416–18 (N.D. Miss. 1996); Gould, 829 F.Supp. at 724, 729. National Union has, on other occasions, prevailed in similar suits. See e.g., City of Oakland v. National Union Fire Ins. Co. of Pittsburgh, Pa , 56 F.3d 70 (9th Cir. 1995) (unpublished opinion); Wackenhut Servs., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 15 F .Supp.2d 1314, 1323–24 (S.D. Fla. 1998); Stein–Brief, 65 Cal.App.4th at 368, 373; O'Brien Energy Sys., Inc. v. American Employers' Ins. Co., 629 A.2d 957, 959, 963–63 (Pa.Super. 1993).

> except to take them or leave them or to select fr om
> limited options offered by the insur er or issuer.
> Therefore, it is incumbent upon the dominant party to
> make terms clear. Convoluted or confusing terms are
> the problem of the insurer or issuer -- not the insured.

Penn Mutual, 695 A.2d at 1149-50. Because of the one-sided nature of insurance policies, insurance companies are in the best position to clarify potentially ambiguous terms and avoid future disputes. The persistent litigation surrounding the meaning of "invasion of the right of private occupancy" strongly suggests that they indeed should do so. A simple definition of the phrase, indicating, for example, that it refers only to offenses requiring a physical invasion (or only to those involving a tenant-landlord dispute, etc.) would be dispositive.

At oral argument, we asked counsel why National Union had chosen not to further define the contested phrase. Counsel responded that "this phraseology makes the policy marketable." In response to our follow-up question, counsel denied that the phrase was "marketable" solely because it created confusion; instead, he stated that"the purpose of this policy language is that it covers fact patter ns and situations and scenarios that don't narrowly fall within the parameters of a `wrongful entry' or `wr ongful eviction.' " Even if this is true, we fail to see how further defining the scope of the language would undercut this purpose. If anything, it would help clarify which fact patter ns, situations, and scenarios are indeed cover ed. We will not speculate as to why National Union has consistently refused to clarify its language, but one thing is clear: The provision at issue in the National Union CGL policy is ambiguous.

There is a time and place for reliance upon Latin maxims and principles of statutory construction, but not at the expense of commonsense. See SI Mgmt. L.P . v. Wininger, 707 A.2d 37, 42 (Del. 1998) (holding that insurance contracts "must be interpreted in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and limitation of coverage. It is the obligation of the insurer to state clearly the terms of the policy."). A single phrase, which insurance

19

companies have consistently refused to define, and that has generated literally hundreds of lawsuits, with widely varying results, cannot, under our application of commonsense, be termed unambiguous. As such, we hold that an "invasion of the right of private occupancy" must be construed liberally, and that the CGL policy does cover the County's legal expenses and its liability arising from Acierno's claims.

We reverse the District Court's grant of summary judgment in favor of National Union, and remand the cause for further proceedings consistent with this opinion.

SCIRICA, Circuit Judge, dissenting.

Because I would affirm the judgment of the District Court, I respectfully dissent.

Acierno sued New Castle County alleging that its denial of a building permit unlawfully deprived him of his property without due process of law and that it arbitrarily treated him differently than other real estate developers in violation of the Equal Protection Clause of the Fourteenth Amendment. Acierno also alleged that the County violated his rights to due process and equal protection when it voided his development plan and rezoned his pr operty. Contending Acierno alleges an "invasion of the right of private occupancy," the County maintains National Union Fire Insurance Company has a duty to defend. In essence, the County asserts that Acierno alleged that the County's regulatory actions impaired Acierno's right to use and enjoy his property.1

Interpreting the policy, the District Court denied a "duty to defend" holding that "personal injury" does not extend to claims involving frustrated commercial expectations regarding future development of pr operty. After declining to construe the term "invasion of the right of private occupancy" on a plain meaning reading, the District Court employed the well known tools of construction of ejusdem generis and noscitur a sociis.

As the District Court recognized, the ter m "invasion of the right of private occupancy" follows the enumeration of specific actions relating to possessory inter ests in real property -- wrongful eviction and wr ongful entry.2 It would

_____

1. As noted, the Commercial General Liability policy purchased from National Union Fire Insurance provides in part:

> 10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following of fenses:
>
> \* \* \*
>
> c. The wrongful eviction from, wr ongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner , landlord or
lessor.

2. See Sadler v. New Castle County, 565 A.2d 917, 923 (Del. 1989); Hercules, Inc. v. Virginia, 1999 WL 167830, at \*4 (Del. Super. Feb. 12,

21

seem, therefore, that applying a br oader definition, would expand coverage beyond the intended scope of the policy language.

The related doctrine of noscitur a sociis 3 also points to the conclusion that when read in context, the phrase "invasion of the right of occupancy" should be given a meaning analogous to "wrongful eviction" and"wrongful entry." The phrase "invasion of the right of private occupancy" does not appear to encompass financial harms like the denial of a building permit, the voiding of a development plan, and the rezoning of land.

Acierno alleges that the County improperly deprived him of his right to use and enjoy his land. He makes no allegations of eviction, entry or similar wr ongful disturbance.

The District Court found:

> that the coverage of the CGL policy does not extend to the County's liabilities arising from the Acierno litigation. This conclusion is consistent with the nature of the insurance policies purchased by the County. The County bought a POL4 policy fr om National Union to

_____

1999) ("Where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but ar e to be held as applying
only to persons or things of the same general kind or class as those specifically mentioned.").
3. The doctrine of noscitur a sociis holds that "general and specific words
capable of the analogous meaning when associated together take color from each other so that the general wor ds are restricted to a sense analogous to the specific words." City of Delray Beach v. Agric. Ins. Co., 85 F.3d 1527, 1534 (11th Cir. 1996).
4. The District Court found that "in 1992, National Union sold the County a Public Officials and Employees Liability Insurance Policy (Policy No. 439-12-94) (the "POL policy"). The POL policy has a $1 million limit of liability for the policy period May 12, 1992 to July 1, 1993. The POL policy excludes coverage for claims arising fr om prior litigation, stating that National Union shall not be made liable to make any payment in connection with any claim for any wr ongful act occurring prior to May 12, 1992, for which the County might r easonably expect that such wrongful act would give rise to a claim." New Castle County v. Nat'l Union Fire Ins. Co., 84 F.Supp.2d 550, 552 (D. Del. 2000).

insure it against potential liabilities arising from the conduct of its officials and employees. Although the parties disagreed whether the "prior litigation" exclusion of the POL policy obligated National Union to indemnify the County for the Acierno litigation, there is no dispute that the POL policy covers the kinds of liabilities incurred by the County in its zoning and permitting activities. Recognizing that the County had already insured itself under the POL policy against liabilities arising from the exercise of its regulatory authority, it is not surprising that its CGL policy covers a different set of potential liabilities.

New Castle, 84 F.Supp.2d at 556.

Substantially for the reasons set forth by the District Court, I would affirm its judgment.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

23