# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 02-3198

THEODORE ROXFORD, D/B/A VAKIL,

*Plaintiff-Appellant,*

v.

AMERITECH CORPORATION,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 282—**James B. Zagel**, *Judge.*

---

ARGUED MAY 13, 2003—DECIDED JULY 11, 2003

---

Before ROVNER, DIANE P. WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* In the mid-1990's, Lawrence Niren explained to anyone who would listen how he used a variety of schemes to con businesses out of more than $2 million. In most cases, companies paid Niren a small fee in exchange for information about potential investors or other business opportunities that didn't really exist. Niren eventually came clean, sending a full confession to various media outlets and turning himself into authorities. He hoped the publicity he generated would help him promote the book he had almost finished—he had even sold an option for the rights to the movie, tentatively titled "Barbarians at the Gate Meet Robin Hood, as Written by Woody Allen."

The only problem with Niren's confession was that nobody seemed to care enough to hear it. Several of the companies Niren says he swindled thought he had actually completed the work he was paid to do, while others determined it wasn't worth their time to try to collect the small amounts Niren claimed to have stolen. The Justice Department decided not to pursue a prosecution, leaving Niren strangely willing but unable to get arrested. *Forbes* magazine, in a featured article entitled "Stop Me Before I Steal Again," called Niren a fellow "so pathetic his story demands to be told."[1]

This case arises out of a deal Theodore Roxford struck with Ameritech that looks similar to one of Niren's old tricks. The resemblance isn't all that surprising because, as it turns out, Lawrence Niren and Theodore Roxford are actually the same person—Niren changed his name in 1995. Roxford claims that this time he actually completed the work he had promised to do and deserves to be paid accordingly.

Roxford's dealings with Ameritech began in 1996 when he told the company that he had confidential information from telecommunications companies Bell Canada Enterprises, Inc. ("BCE") and Northern Telecom of Canada about their interest in a possible joint venture or other business combination. Roxford sent Ameritech the information he had (Ameritech claims—and the district court agreed—that Roxford could not prove that the information was, in fact, confidential), and, several conversations later, Roxford and Ameritech signed the agreement at the heart of this case. Under the terms of that September 12 agreement, Vakil (the fictitious name Roxford used for his mergers and acquisition business) promised to disclose confidential information from BCE and Northern Telecom about a possible

---

[1] *Forbes*, June 19, 1995.

merger with Ameritech. In return, Ameritech promised to pay Roxford a finder's fee equal to .1 percent of the transaction price of any deal it struck with the Canadian companies, with a maximum payout of $2.5 million.

Two years later, Ameritech paid approximately $3.4 billion to acquire 20 percent of Bell Canada, a BCE subsidiary. Roxford claims that he is entitled to the $2.5 million finder's fee for facilitating the deal. Ameritech argues that Roxford never fulfilled his obligations under the agreement and, as such, it doesn't think it owes him anything. Specifically, Ameritech claims that Roxford never lived up to his September 12 obligations because he sent all of the relevant information before the contract was signed and he had no evidence that the information was confidential. The district court agreed on both counts and granted Ameritech's motion for summary judgment. Roxford appeals.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review a grant of summary judgment *de novo*, viewing all facts and taking all inferences from those facts in a light most favorable to Roxford. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Because Roxford originally filed this suit in the Northern District of California, we apply California's choice-of-law rules to determine the applicable law. *See International Marketing, Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). California's "government interest" analysis suggests that we apply California law. *See, e.g., Application Group, Inc. v. Hunter Group*, 61 Cal.App.4th 881, 896-97, 72 Cal.Rptr.2d 73, 82 (1998).

The district court found the language of the September 12 agreement to be clear: Roxford would provide confidential information at some future time. Roxford has two responses. First, he claims that, after September 12, he sent

Ameritech the originals of the documents he had previously faxed to the company. He says that means he actually provided confidential information after the agreement was signed. That argument, however, contains a fatal flaw. Since Roxford had already shared the information, it wasn't really confidential anymore. Moreover, Ameritech never would have agreed to pay up to $2.5 million for information it already had, so it makes little sense to suggest that the "confidential information" Roxford promised to provide was the same information he had already shared.

Roxford's more plausible argument is that both parties intended the "confidential information" in the agreement to refer to the documents Roxford had already sent, even though the language of the agreement suggested that new information would be forthcoming. Therefore, Roxford concludes, he had already performed under the contract by the time the agreement was signed—the agreement was meant simply to formalize the deal and to ensure confidentiality.

Whether Roxford believed that the agreement referred to the information he had already provided is largely irrelevant, however, because of the plain language of the September 12 contract. Under California law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal Civ Code § 1638 (2003). "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (quoting *Reserve Ins. Co. v. Pisciotta* 30 Cal. 3d 800, 807 (1982)). *See also Sterling Builders Inc. v. United Nat. Ins. Co.*, 79 Cal.App.4th 105, 111, 93 Cal.Rptr.2d 697, 701 (2000) ("for a contract to be ambiguous it must be susceptible to at least two different reasonable interpretations").

The language of the September 12 agreement could not have been much clearer. The first sentence of the letter

says, "[t]his Agreement replaces all and any other Agreements between Vakil and Ameritech," making any discussions or agreements Roxford had with Ameritech before September 12 irrelevant. The agreement continues: "Vakil has confidential information from BCE Inc. and Northern Telecom. . . . Vakil will immediately disclose this information to Ameritech . . . ." That language leaves no doubt that Roxford (as Vakil) promised to send confidential information to Ameritech sometime after September 12. Because there is no ambiguity in the language of the contract, Roxford must live by its terms.

If Roxford actually intended the agreement to apply to the information he had already given Ameritech, as he claims, he has only himself to blame—he's the one who drafted the agreement (which was printed on Vakil letterhead), so he had full control over the language. During his deposition, Roxford testified that he had disclosed all of the information to Ameritech by August 27, so by his own admission he failed to perform. Since no confidential information was delivered after the agreement, Roxford is not entitled to collect the finder's fee whether or not the information he initially provided was confidential.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*